IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA


GABRIEL ROBERT GONZALEZ          :          CIVIL ACTION

    V.          :

RANDALL BRITTON, et al.          :          NO. 09-2029

## RESPONSE TO PETITION FOR WRIT OF HABEAS CORPUS

Petitioner hid in the back seat of a car belonging to a
pizza delivery driver.  The driver saw petitioner and started to
throw money into the back seat in an attempt to prevent
petitioner from harming him.  Petitioner nonetheless fatally shot
the victim in the chest and made off with approximately $200.
Convicted of second degree murder, robbery, and possessing
instruments of crime, petitioner now seeks federal habeas relief.
For the reasons set forth below, respondents deny that petitioner
is entitled to federal habeas relief.  The petition for writ of
habeas corpus should accordingly be denied.

## PROCEDURAL AND FACTUAL BACKGROUND

On the night of February 29, 2000, Vincent Green was working
as a pizza delivery driver for Olde English Pizza, at 6015 North
5th Street in Philadelphia.  At about 11:40 p.m., the manager,
Bruce Sulpizio, gave Mr. Green three orders to deliver.  Mr.
Green carried the orders out to his car, which was parked in the
rear driveway behind the shop.  About thirty seconds later, Mr.
Sulpizio heard a gunshot.  Mr. Green walked back into the store
and said "Bruce, he got me, I'm done."  He then collapsed onto

Mr. Sulpizio. Mr. Sulpizio glanced outside and saw a person with a gun in his hand exiting Mr. Green's car. Mr. Sulpizio noted that the gunman was approximately 5'8" or 5'9", but saw little else. Mr. Sulpizio called 911, and some time later, the police arrived. Mr. Green was rushed to Albert Einstein Memorial Hospital, where he was pronounced dead at 12:07 a.m. on March 1, 2000. An autopsy revealed that he died of a gunshot wound to the chest from a .45 caliber semi-automatic pistol. Soot and burn marks found on the victim's shirt showed that the killer's gun had been placed directly against Mr. Green's chest when it was fired. An investigation of the crime scene revealed that the inside dome light of the victim's car had been broken out and was laying in the back seat. The police also discovered a fired .45 cartridge case in a baby seat located behind the driver's seat (N.T. 2/13/01, 792-804, 835-840; 2/15/01, 1107-1111, 1117-1122).

Philadelphia Police Officers Franciso Hernandez and Richard Duvevier arrived at the pizza shop before the victim was taken to the hospital. Officer Hernandez proceeded by foot to search for anyone matching the flash description of the shooter broadcast over police radio, with Officer Duvevier following in their police car. At the corner of Lawrence and Champlost Streets, Officer Hernandez looked southbound on Lawrence Street and saw a man fitting the flash description of the suspect. The man vanished into one of the houses on the 5900 block of Lawrence Street. The two officers searched for the man with flashlights, but were unable to find him (N.T. 2/13/01, 857-864).

2

The day after the murder, Officer Christopher Sarver was flagged down by a security guard at Modell's Sporting Goods store at the 101 East Olney Shopping center in Philadelphia. Based on information provided by the security guard, Officer Sarver approached petitioner, who was sitting in a car parked in the fire lane in front of the store. Officer Sarver retrieved a pair of Nike shoes from the passenger seat of petitioner's car, and accompanied petitioner back into the store. After some investigation, Officer Sarver placed petitioner under arrest for retail theft, and drove him to the 35th Police District at Broad and Champlost Streets (N.T. 2/14/01, 888-892, 905).

Early the next morning, while petitioner was still in jail on the retail theft charge, the police received an anonymous phone call, implicating petitioner in the shooting at the pizza shop. At approximately 4:45 a.m., petitioner arrived at the Homicide Unit and was placed in an interview room. His handcuffs were removed and Detective William Gross took some biographical information from petitioner. Detective Gross then explained to petitioner that he wanted to speak with him about the death of Vincent Green, and then read him his Miranda[1] rights. After Detective Gross finished reading petitioner his rights, petitioner said "you might find [my] fingerprints inside the car because [Green] asked me to fix his inside light" (N.T. 2/14/01, 943). Detective Gross immediately ceased speaking with petitioner, left the interview room, and asked Detective Lawrence

_____

[1]Miranda v. Arizona, 384 U.S. 486 (1966).

3

McGuffin to bring his portable typewriter into the interview room. Detective Gross then read petitioner his rights again, and asked him a series of seven questions about his understanding of his rights. As Detective Gross read the questions, Detective McGuffin typed out the answers, and petitioner then initialed each answer and signed his name. Detective Gross then left Detective McGuffin to complete the interview with petitioner (N.T. 2/15/01, 934-952, 992-998).

After about one and one-half hours, petitioner confessed to the shooting. Petitioner stated that on the night of the shooting, he and a companion named Shamp Shadin Jabar[sic], whose nickname was "Shiz," bought a six-pack of Heineken and drank it (three beers apiece) on the corner of the Chinese Store at 4th and Champlost Streets. After finishing the beer, Shiz left and petitioner went home and talked with his "girl." Some time after 11:00 p.m., petitioner retrieved his gun from a Timberland shoe box in his basement and "just went out looking." He walked up behind the pizza shop and saw a blue car with the doors unlocked and the inside light on. Petitioner opened the front driver's side door and looked inside, and then went around to the passenger side and opened the rear door. After he got in the back seat and closed the door, he realized that the inside light was still on. Not wanting to be seen, he ripped the light out. He then saw the rear door of the pizza shop open, and Vincent Green walked out. Petitioner knew Mr. Green because he had delivered pizza to his house and had made "small talk" with him.

Petitioner even had a nickname for Mr. Green - "Remy" - after a character in the movie "Higher Learning."[2]  When Mr. Green entered the car, he saw petitioner armed with the gun and began throwing money at him.  Petitioner then shot Mr. Green and fled with about two hundred dollars (N.T. 2/14/01, 989-1016).

Petitioner ran down the alleyway to Champlost Street and to his house, which was located at 5914 Lawrence Street.  He threw the gun into his backyard near the steps leading to the basement. He was afraid to go out, because he saw policemen with flashlights outside.  The following day, he went to work at his father's barbershop.  He left work at 12:30 and went to Modell's, which was were he "got the sneaks."  Petitioner stated that he "had money for them, but I was like turning myself in 'cause I felt so bad about this."  Petitioner stated that the clothes he was wearing on the night of the murder -- tan boots, a black Dickies shirt and jacket, and a black "skullie cap" with a black ball, were in the basement of his house (N.T. 2/14/01, 1011, 1015-16).

Petitioner reviewed his statement and added some information.  During the course of the interview, petitioner never asked to speak with an attorney.  After the interview was completed, Detective Gross received word that a lawyer purporting to represent petitioner, Stephen Serota, Esquire, was in the lobby.  Detective Gross met Mr. Serota in the lobby and brought

---

[2]Mr. Green, due to a medical condition, was bald, as was the character in the movie (N.T. 2/13/01, 846; 2/15/01, 1031-1032).

him up to meet alone with petitioner. Detective Gross showed Mr. Serota petitioner's statement. Detective Gross signed Mr. Serota in at 11:20 a.m., and signed him out at 11:35 a.m. (N.T. 2/14/01, 967-69; 3/15/01, 1220).

Later that day, the police executed a search warrant for petitioner's home at 5914 North Lawrence Street. In the basement, police found a black Dickies skull cap with a black ball, a pair of black jeans, a pair of blue jeans, a black Dickies jacket, a Timberland shoe box, a gun box for a .45 caliber handgun, and some papers bearing petitioner's name and address. The police, however, were unable to locate the gun. Detective Gross had previously seized from petitioner's person $317 cash (N.T. 3/14/01, 1021-1034).

Petitioner was charged with murder, robbery, and possessing instruments of crime. Prior to trial, petitioner litigated a motion to suppress his statement. In his motion, he claimed that the detectives struck and choked him. At the suppression hearing, both Detectives Gross and McGuffin testified that petitioner was never threatened or abused verbally or physically (N.T. 2/12/01, 565-566, 572, 597-598). Petitioner's father testified that he called Stephen Serota on the morning of March 2, 2000, and asked him to go down to Homicide and speak with petitioner. Mr. Serota testified that, when he spoke with petitioner after he gave his statement, petitioner told him that he had been beaten and choked by the police. Mr. Serota admitted that there were no marks on petitioner's face, nor any evidence

of bleeding or bruising. He stated that he saw only a red "line" or "abrasion" around petitioner's neck, about 3/8 of an inch thick. He also stated that he never asked to speak to any supervisors, or with the Internal Affairs Division, about petitioner's supposed claim of police misconduct (N.T. 2/12/01, 631-635; 2/13/01, 662-663, 672, 674). Petitioner testified that the detectives denied his alleged repeated requests for counsel. He also claimed that Detective Gross punched him in the face twice and then choked him. He further testified that his "whole statement is false." Petitioner, however, admitted that when he was interviewed by a medical technician prior to his being admitted to the county prison, he said nothing about his supposed injuries (N.T. 2/13/01, 691, 725-727). The Honorable David N. Savitt denied the motion to suppress, specifically finding credible the testimony of Detectives Gross and McGuffin (N.T. 2/13/01, 759).

Petitioner, represented by Tariq El-Shabazz, Esquire, proceeded to trial by a jury seated before Judge Savitt. Confirming details in petitioner's statement, Shamsiddin Jabar ("Shiz") testified that he saw petitioner at 8:00 p.m. on the night of the robbery, that he and petitioner drank three Heinekens apiece in front of the Chinese store at 4th and Champlost, and that he and petitioner parted ways after about an hour. He also testified that he did not speak with police until around 11:00 a.m. on March 2, 2000 (N.T. 2/15/01, 1095-1098, 1101-1102). James Maryanski, the prison intake nurse, testified

7

that he saw no visible injuries when he examined petitioner on March 3, 2000 (N.T. 2/15/01, 1134-1135). Mr. Serota testified that when he met with petitioner, he saw no bruises, but did see a 3/8 inch red abrasion on petitioner's neck. He again testified that he did not attempt to speak with a supervisor or the police Internal Affairs Division regarding what he had seen (N.T. 2/15/01, 1167-1168, 1177-1179). Petitioner did not testify at trial.

On February 21, 2001, the jury rejected the defense argument that petitioner's confession was physically coerced and convicted petitioner of second degree murder, robbery, and possessing an instrument of crime. On that same date Judge Savitt imposed a mandatory sentence of life imprisonment for second degree murder, imposed no additional sentence for robbery, and imposed a concurrent sentence of one to two years imprisonment for possessing an instrument of crime. On March 1, 2001, petitioner filed post-sentence motions, which he withdrew on June 7, 2001.

Represented by new counsel, Mark S. Greenberg, Esquire, petitioner appealed to the Pennsylvania Superior Court, claiming (1) that the trial court erred in not suppressing his confession; (2) that he was denied a fair trial when an anonymous telephone call connecting him to the homicide was introduced, and that trial counsel was ineffective in failing to object to the admission of this hearsay; (3) that trial counsel was ineffective in failing to object to testimony connecting petitioner to an unrelated retail theft; and (4) that trial counsel was

ineffective in not calling character witnesses and alibi witnesses.[3]  Finding petitioner's claims meritless, the Superior Court affirmed the judgments of sentence in an unpublished memorandum opinion filed on August 7, 2002.  <u>Commonwealth v. Gonzales</u>, No. 2019 EDA 2001 (Pa. Super. 2002).[4]  The Pennsylvania Supreme Court denied allowance of appeal on September 3, 2004.  <u>Commonwealth v. Gonzales</u>, No. 439 EAL 2002.

On February 9, 2004, petitioner filed a <u>pro se</u> petition under Pennsylvania's Post Conviction Relief Act (PCRA), 42 Pa.C.S.A. § 9541 <u>et seq</u>.  Counsel, Dennis Turner, Esquire, was appointed and filed amended petitions on May 18 and October 20, 2006.  On May 11, 2007, the PCRA court, the Honorable Sandy L.V. Byrd, held an evidentiary hearing.  On May 18, 2007, Judge Byrd dismissed the petition.

Represented by Mr. Turner, petitioner appealed to the Pennsylvania Superior Court, claiming that trial counsel was ineffective for advising him not to testify at trial.[5]  In an unpublished opinion filed on August 18, 2008, the Superior Court affirmed the denial of PCRA relief.  <u>Commonwealth v. Gonzalez</u>,

---

[3]A copy of petitioner's Superior Court direct appeal brief is attached as Exhibit A.

[4]A copy of the Superior Court opinion on direct appeal is attached as Exhibit B.

[5]A copy of petitioner's Superior Court PCRA appeal brief is attached as Exhibit C.

No. 1586 EDA 2007 (Pa. Super. 2008).[6]  The Pennsylvania Supreme

Court denied allowance of appeal on January 16, 2009.

Commonwealth v. Gonzales, 498 EAL 2008.

On May 11, 2009, petitioner filed this petition for writ of

habeas corpus, claiming (1) that his conviction was obtained by

use of a coerced confession; (2) that trial counsel interfered

with petitioner's constitutional right to testify at his trial;

(3) that trial counsel was ineffective in failing to call

character witnesses and alibi witnesses; and (4) that trial

counsel was ineffective in failing to lodge objections to

testimony connecting petitioner to an unrelated retail theft.

Respondents deny that petitioner is entitled to federal

habeas relief.  His claims are meritless, as discussed below.

The petition must accordingly be denied without a hearing.

## DISCUSSION

### A. Standard of Review

Petitioner's habeas petition is governed by the provisions

of the Antiterrorism and Effective Death Penalty Act of 1996

(AEDPA) (effective April 24, 1996).  Under AEDPA, a federal

habeas court may not disturb a state court's resolution of the

merits of a constitutional issue unless the state decision was

contrary to, or involved an unreasonable application of, clearly

established federal law, as determined by the Supreme Court of

the United States, or was based on an unreasonable determination

---

[6]A copy of the Superior Court opinion on PCRA appeal is
attached as Exhibit D.

of the facts in light of the evidence presented in the state
court proceeding. 28 U.S.C. § 2254(d)(1) and (2). The
requirement that federal courts respect **reasonable** state court
decisions on federal questions represents a marked departure from
prior habeas practice, particularly in the review of mixed
questions, i.e., questions that involve an application of the law
to the facts.

Prior to AEDPA, the lower federal courts were free to ignore
state court decisions on mixed questions and consider the
underlying issues de novo. See Miller v. Fenton, 474 U.S. 104
(1985). Thus, a single federal judge could overturn the
perfectly reasonable decision of an entire state judicial system
merely because that judge disagreed with it. The new standard
reframes the inquiry and directs the federal habeas court to
assess the reasonableness of the state court determination in
light of governing Supreme Court precedent.

In Williams v. Taylor, 120 S.Ct. 1495 (2000), the United
States Supreme Court addressed the standard of review under
AEDPA's amendments to the habeas statute. The Williams Court
held that 28 U.S.C. § 2254(d)(1) "places a new constraint on the
power of the federal habeas court to grant a state prisoner's
application for a writ of habeas corpus with respect to claims
adjudicated on the merits in state court." 120 S.Ct. at 1523.
That is, the writ may issue only under two narrow circumstances--
defined by the "contrary to" clause and the "unreasonable

application" clause--both of which require more than a mere finding that the state court's decision was incorrect. Id.

A federal habeas petitioner is entitled to relief under the "contrary to" clause only if "the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court on a set of materially indistinguishable facts." Id., at 1523. The Court in Williams was careful to note that most cases will not fit into this category, which is limited to direct and unequivocal contradiction of Supreme Court authority. Id. at 1520; see also Hameen v. State of Delaware, 212 F.3d 226, 235 (3d Cir. 2000); Matteo v. Superintendent, SCI Albion, 171 F.3d 877, 888 (3d Cir.) (en banc), cert. denied, 120 S.Ct. 73 (1999) (to prove entitlement under "contrary to" clause, "it is not sufficient for the petitioner to show merely that his interpretation of Supreme Court precedent is more plausible than the state court's ..."; he must demonstrate "that the Supreme precedent **requires** the contrary outcome") (emphasis in original).

Similarly, under the "unreasonable application" clause, "a federal habeas court may not issue the writ simply because that court concludes in its judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." Williams, 120 S.Ct. at 1522. Rather, relief is appropriate only where the state court decision is also **objectively unreasonable.** Id.; Woodford v. Visciotti, 123 S.Ct. 357, 360 (2002). See Werts v. Vaughn, 228 F.3d 178, 197 (3d Cir.

2000), quoting _Matteo_, 171 F.3d at 890 ("[t]he federal habeas court should not grant the petition unless the state court decision, evaluated objectively and on the merits, resulted in an outcome that cannot reasonably be justified under existing Supreme Court precedent"). While federal habeas courts are not precluded from considering the decisions of the inferior federal courts when evaluating whether the state court's application of Supreme Court precedent was reasonable, "federal courts may not grant habeas corpus relief based on the state court's failure to adhere to the precedent of a lower federal court on an issue that the Supreme Court has not addressed." _Matteo_, at 890. To the contrary, "§ 2254(d)(1) restricts the source of clearly established federal law to this [the United States Supreme] Court's jurisprudence." _Williams_, 120 S.Ct. at 1523.

Moreover, it is not necessary for the state court to cite the controlling Supreme Court precedents in order for the AEDPA standard of review to apply. To the contrary, as the Supreme Court held in _Early v. Packer_, 123 S.Ct. 362 (2002), citation of Supreme Court cases is not required, indeed, **awareness** of Supreme Court cases is not even required, "so long as neither the reasoning nor the result of the state-court decision contradicts them." _Id._, at 365.[7] See _Priester v. Vaughn_, 382 F.3d 394 (3d

---

[7]Indeed, on the same day, in _Woodford v. Visciotti_, 123 S.Ct. 357, 359 (2002), the Supreme Court held that the California Supreme Court's "occasional shorthand reference" to the ineffectiveness standard -- a reference that may have been imprecise -- did not render its decision unworthy of deference. On the contrary, the question is whether the state court's
(continued...)

13

Cir. 2004) (holding that AEDPA's deferential standard of review applies even if the state court does not cite to any federal law as long as the state court decision is consistent with federal law).  Indeed, the § 2254(d) standards apply even when the state court rejects a claim without any explanation of its ruling.  Weeks v. Angelone, 528 U.S. 225 (2000); Chadwick v. Janecka, 312 F.3d 597 (3d Cir. 2002); Werts v. Vaughn, 228 F.3d 178 (3d Cir. 2000), cert. denied, 121 S.Ct. 1621 (2001).

With respect to 28 U.S.C. § 2254(d)(2), which holds that federal habeas relief may be granted when the state court adjudication was based on an unreasonable determination of the facts in light of the evidence presented, the petitioner must demonstrate that a reasonable fact-finder could not have reached the same conclusions given the evidence.  If a reasonable basis existed for the factual findings reached in the state court, then habeas relief is not warranted.  Campbell v. Vaughn, 209 F.3d 280, 291 (3d Cir. 2000), cert. denied, 531 U.S. 1084 (2001).

Finally, in Appel v. Horn, 250 F.3d 203 (3d Cir. 2001), the Third Circuit held that even where AEDPA's deferential standard of review does not apply because a claim was not "adjudicated on the merits in State court proceedings" under § 2254(d), the state court's factual determinations are still presumed to be correct

---

[7](...continued)
decision is **inconsistent** with Supreme Court precedent, not whether the state decision contains any particular language or citation.  The Court also warned federal courts against a "readiness to attribute error" to state courts as a vehicle to engage in de novo review.  123 S.Ct. at 360.

absent clear and convincing evidence to the contrary under 28 U.S.C. § 2254(e)(1). Id., 250 F.3d at 210. The findings of fact and credibility determinations of the state courts are thus presumptively correct for purposes of federal habeas review.

Viewed in light of AEDPA's standard of review, petitioner's claims provide no basis for relief.

### B. Strickland v. Washington Governs Claims Of The Ineffective Assistance Of Counsel.

Because many of petitioner's claims for relief involve allegations of the ineffectiveness of counsel, respondents will set forth the governing standards for such claims here, to be applied to petitioner's individual ineffectiveness claims in order to evaluate the reasonableness of the state court's determinations under AEDPA. In Williams, the United States Supreme Court stated that the "clearly established federal law" respecting ineffectiveness claims, as determined by its own precedents, is found in Strickland v. Washington, 466 U.S. 668, reh. denied, 467 U.S. 1267 (1984). Thus, the question here is whether the state court's resolution of petitioner's ineffective-ness claims was contrary to Strickland or amounted to an unreasonable application of it.

Strickland provides that counsel is presumed effective. The burden rests on the petitioner to prove that counsel's actions or strategies were so unreasonable that no competent lawyer would have pursued them. Even if counsel's acts or omissions were unreasonable under this standard, relief may be granted only where the petitioner also proves that he was prejudiced by

counsel's conduct, that is, that there is a reasonable probability that but for counsel's derelictions the result of the proceeding would have been different.

Courts reviewing claims of counsel ineffectiveness "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" Senk v. Zimmerman, 886 F.2d 611 (3d Cir. 1989). "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Strickland, supra, 466 U.S. at 689. This is so because it is "all too tempting" for a defendant to second-guess counsel, and "all too easy" for a court to deem a particular act or omission unreasonable merely because counsel's overall strategy did not achieve the result his client hoped for. Id. See also Lockhart v. Fretwell, 506 U.S. 364, 372 (1993) (Strickland Court adopted "the rule of contemporary assessment" because it recognized that "from the perspective of hindsight there is the natural tendency to speculate as to whether a different trial strategy might have been more successful"). Strickland imposes a "highly demanding" standard upon petitioner to prove the "gross incompetence" of his counsel in order to secure relief. Kimmelman v. Morrison, 477 U.S. 365, 382 (1986).

Moreover, appellate counsel's failure to raise every conceivable issue, even those that are arguably meritorious, does not amount to _per se_ ineffectiveness. The Sixth Amendment does not require counsel to raise any and all possible objections that subsequent counsel, with the benefit of hindsight, says he or she would have raised if stewarding the matter. Indeed, to the contrary, the cases recognize that counsel may exercise his or her professional judgment as to which claims to pursue. _See_ _Jones v. Barnes_, 463 U.S. 745, 750-54 (1983) (appellate counsel is charged with choosing those issues he deems to have the greatest chance of success, winnowing out weaker arguments and focusing on a few key issues); _Smith v. Murray_, 477 U.S. 527, 536 (1986) (where counsel reviewed trial transcript and raised multiple issues on appeal, deliberate decision not to pursue Fifth Amendment claim did not amount to ineffective assistance).

Here, the state court's resolution of petitioner's ineffectiveness claims was neither contrary to nor an unreasonable application of _Strickland_.[8]

---

[8]Pennsylvania adopted the _Strickland_ standard for assessing claims of counsel ineffectiveness in _Commonwealth v. Pierce_, 515 Pa. 153, 527 A.2d 973 (1987). There, the Pennsylvania Supreme Court compared its previously announced ineffectiveness standard of _Commonwealth ex rel. Washington v. Maroney_, 427 Pa. 599, 235 A.2d 349 (1967), with the standard set forth in _Strickland_ and concluded that they were the same. 527 A.2d at 976. The Third Circuit has recognized that the _Pierce_ standard is for all practical purposes identical to the _Strickland_ standard. _See_ _Rompilla v. Horn_, 355 F.3d 233, 248-49 (3d Cir. 2004), _rev'd on other grounds_, _Rompilla v. Beard_, 125 S.Ct. 2456 (2005); _Werts v. Vaughn_, 228 F.3d 178, 203-204 (3d Cir. 2000).

I. **PETITIONER'S CLAIM THAT HIS CONVICTION WAS OBTAINED BY USE OF A COERCED CONFESSION PROVIDES NO BASIS FOR FEDERAL HABEAS RELIEF.**

Petitioner claims that his conviction was obtained by use of a coerced confession. According to petitioner, the trial court should have suppressed his confession because police allegedly choked and beat him until he confessed. As the state courts reasonably found, petitioner's suppression claim provides no basis for relief.

In a collateral proceeding, the petitioner bears the burden to show by a preponderance of the evidence that his confession was involuntary. Miller v. Fenton, 796 F.2d 598, 604 (3d Cir. 1986), cert. denied, 479 U.S. 989 (1986). The voluntariness, vel non, of a confession is a mixed question of law and fact. Miller v. Fenton, 474 U.S. 104 (1985). "The federal habeas court must defer to the state court's determination of a mixed question of law and fact where that determination is reasonable, that is, within the boundaries of the law established by the Supreme Court." Berryman v. Morton, 100 F.3d 1089, 1103 (3d Cir. 1996). A state court's determination of a mixed question of law and fact may be overturned only where the federal habeas court is convinced that the state court's determination constitutes grave error. Id.[9]

_____

[9]While a state court ruling on the voluntariness of a confession was not entitled to a presumption of correctness under 28 U.S.C. §2254(d) prior to the AEDPA, the subsidiary factual findings upon which the determination was based were entitled to that presumption. Miller v. Fenton, supra, 474 U.S. at 117. Accord Marshall v. Lonberger, 459 U.S. 422 (1983) (Section 2254
(continued...)

18

Where the petitioner contests the voluntariness of his confession, the question is "whether, under the totality of the circumstances, the challenged confession was obtained in a manner compatible with the requirements of the Constitution." Miller v. Fenton, 474 U.S. 104, 112 (1985). See Miller v. Fenton, 796 F.2d 598 (1986) (that police used manipulative interrogation techniques, lied to petitioner, behaved solicitously toward him, encouraged him to unburden himself, and even implied he would receive psychiatric help did not render confession involuntary under totality of circumstances). Absent coercive police activity, a confession will not be deemed involuntary. Colorado v. Connelly, 479 U.S. 157, 167 (1986) ("coercive police activity is a necessary predicate to the finding that a confession is not 'voluntary' within the meaning of the Due Process Clause").

The suppression claim that petitioner presented to the state courts provides no basis for federal habeas relief. The state trial court determined that petitioner had made a knowing, intelligent, and voluntary waiver of his Miranda rights, and that his confession was voluntary, after conducting a suppression hearing. At the suppression hearing, both Detectives Gross and McGuffin testified that petitioner was never threatened or abused verbally or physically (N.T. 2/12/01, 565-566, 572, 597-598).

_____

[9](...continued)
(d) "gives federal habeas courts no license to redetermine credibility of witnesses whose demeanor has been observed by the state trial court and not by them"); Sumner v. Mata, 455 U.S. 591 (1982) (Sumner II).

Petitioner's father testified that he called Stephen Serota on
the morning of March 2, 2000, and asked him to go down to
Homicide and speak with petitioner.  Mr. Serota testified that,
when he spoke with petitioner after he gave his statement,
petitioner told him that he had been beaten and choked by the
police.  Mr. Serota admitted that there were no marks on
petitioner's face, nor any evidence of bleeding or bruising.  He
stated that he saw only a red "line" or "abrasion" around
petitioner's neck, about 3/8 of an inch thick.  He also stated
that he never asked to speak to any supervisors, or with the
Internal Affairs Division, about petitioner's supposed claim of
police misconduct (N.T. 2/12/01, 631-635; 2/13/01, 662-663, 672,
674).  Petitioner testified that the detectives denied his
alleged repeated requests for counsel.  He also claimed that
Detective Gross punched him in the face twice and then choked
him.  He further testified that his "whole statement is false."
Petitioner, however, admitted that when he was interviewed by a
medical technician prior to his being admitted to the county
prison, he said nothing about his supposed injuries (N.T.
2/13/01, 691, 725-727).

The Honorable David N. Savitt denied the motion to suppress,
specifically finding credible the testimony of Detectives Gross
and McGuffin, in which they stated that petitioner was in no way
coerced, threatened, or physically abused (N.T. 2/13/01, 759)
("the defendant was given his warnings, the defendant was not
physically abused, his creature comforts were supplied, there

20

were no promises or threats"). This credibility determination, which necessarily involves a determination that petitioner's contrary testimony was **not** credible, is clearly supported by the record. Neither petitioner nor counsel ever reported the supposed abuse. Even Mr. Serota admitted that petitioner, who claimed to have been struck twice in the face by Detective Gross, had no marks or bruises on his face immediately after petitioner gave his statement. The intake nurse at the county prison saw no sign of any injuries. Many details of petitioner's statement were later corroborated by additional evidence, much of which the police could not have known at the time of the confession. See N.T. 2/20/00, 1249-50, 1278-79, 1281-84.

As the Pennsylvania Superior Court correctly concluded, the state trial court's findings that petitioner made a knowing, intelligent, and voluntary waiver of his <u>Miranda</u> rights, and that petitioner's confession was voluntary, are well supported by the evidence presented at the suppression hearing and that decision was ultimately based on a finding that the Commonwealth witnesses were more credible. <u>Commonwealth v. Gonzales</u>, Memorandum Opinion at 6-8 (Exhibit B). The state trial court's credibility determinations and findings of fact, fully supported in the record, are binding in this habeas action.[10] 28 U.S.C. §

---

[10]Indeed, the Pennsylvania Superior Court also made findings of fact consonant with those of Judge Savitt, <u>see</u> <u>Commonwealth v. Gonzales</u>, Memorandum Opinion at 7-8 (Exhibit B), which are entitled to deference. <u>See</u> <u>Reinert v. Larkins</u>, 379 F.3d 76, 94 (3d Cir. 2004), citing <u>Sumner v. Mata</u>, 449 U.S. 539, 101 S.Ct. 764, 66 L.Ed.2d 722 (1981).

2254(e)(1); see Miller v. Fenton, 474 U.S. 104, 114 (1985) (state court's credibility determinations are binding on federal court in a subsequent habeas action); Marshall v. Lonberger, 459 U.S. 422 (1983) (Section 2254 (d) "gives federal habeas courts no license to redetermine credibility of witnesses whose demeanor has been observed by the state trial court and not by them"); LaVallee v. Della Rose, 410 U.S. 690, 694-95 (1973) (implicit credibility findings of state court are no less binding than explicit findings for purposes of habeas review); Campbell v. Vaughn, 209 F.3d 280, 289-90 (3d Cir. 2000), cert. denied, 121 S.Ct. 789 (2001) (same); Ahmad v. Redman, 782 F.2d 409, 413 (3d Cir. 1986) (same).

In light of the state court's credibility finding, the rejection of this coercion claim is more than reasonable. See Fahy v. Horn, 515 F.3d 169, 194-97 (3d Cir. 2008) (Pennsylvania Supreme Court applied proper standard and was reasonable in affirming the suppression court's finding that Fahy's confession was voluntary and that he knowingly and intelligently waived his Miranda rights in light of the evidence presented and the applicable law; suppression court was entitled to make the credibility determination that it did in the face of conflicting testimony).

## II. PETITIONER'S CLAIM THAT TRIAL COUNSEL INEFFECTIVELY INTERFERED WITH PETITIONER'S CONSTITUTIONAL RIGHT TO TESTIFY AT HIS TRIAL PROVIDES NO BASIS FOR FEDERAL HABEAS RELIEF.

Petitioner claims that trial counsel ineffectively interfered with petitioner's constitutional right to testify at trial. This claim provides no basis for federal habeas relief.

22

A criminal defendant has a fundamental right to testify, Rock v. Arkansas, 483 U.S. 44 (1987), and the ultimate decision whether to do so rests with him. Jones v. Barnes, 463 U.S. 745, 751 (1983). This decision can only be made intelligently after consultation with counsel, and while counsel cannot waive his client's right to take the stand, he certainly has the profes- sional duty to provide his best advice about the advantages and disadvantages that might result from the decision to testify. See Rogers-Bey v. Lane, 896 F.2d 279, 283 (7th Cir.), cert. denied, 498 U.S. 831 (1990) (counsel's advice not to testify reasonable under the circumstances). Here, petitioner does not contend that trial counsel prevented him from testifying in spite of his desire to do so. Nor does petitioner claim that trial counsel failed to inform him of his right to testify. Instead, petitioner contends that trial counsel failed to adequately advise him about testifying and gave him unreasonable advice not to testify at trial. As the state superior court reasonably concluded, however, the record refutes - startlingly - petitioner's contention that trial counsel failed to adequately advise him about testifying and gave him unreasonable advice not to testify at trial.

At the state PCRA evidentiary hearing, trial counsel testified that he advised petitioner of his right to testify, thoroughly explained his recommendation that he not testify, and did nothing to improperly influence his decision to not testify (N.T. 5/11/07, 86-91, 96-97, 104-109, 111-115, 119-120).

Thus, the record overwhelmingly supports the conclusion of the PCRA trial court, which credited counsel's testimony (N.T. 5/18/07, 6), that petitioner - advised of both his right to testify and the potential consequences of invoking that right - made a knowing, intelligent and voluntary decision to not testify at trial.[11]

Petitioner nevertheless asserts that he was improperly deterred from testifying by trial counsel's refusal to suborn perjury. Trial counsel testified that he reviewed petitioner's confession with him and that petitioner told him that he committed the crime (N.T. 5/11/07, 102). Trial counsel testified:

---

[11]Neither trial counsel nor the trial court is required to conduct an on-the-record colloquy of a defendant regarding his right to testify. See Commonwealth v. Duffy, 832 A.2d 1132, 1137 (Pa. Super. 2003) ("We note that there is no requirement that the trial court conduct an on-the-record colloquy when a defendant waives his right to testify.") (citing Commonwealth v. Todd, 820 A.2d 707, 712 (Pa. Super. 2003). Indeed, in the exercise of its supervisory powers over the federal district courts, the Third Circuit has held that where the defendant is represented by counsel, the trial court need not, and generally should not, engage the defendant in a colloquy to insure that his decision not to testify is knowing and voluntary. "[A] trial court's advice as to the right to testify 'could inappropriately influence the defendant to waive his [or her] constitutional right **not** to testify, thus threatening the exercise of this other, converse, constitutionally explicit and more fragile right,'" (i.e., the right to silence). United States v. Pennycooke, 65 F.3d 9, 11 (3d Cir. 1995) (citations omitted, emphasis in original). The decision whether to testify is an important part of trial strategy best left to the defendant and counsel without the intrusion of the court, as that intrusion may have the unintended effect of swaying the defendant one way or the other. Id. See also United States v. Gordon, 290 F.3d 539, 546-47 (3d Cir. 2002); United States v. Leggett, 162 F.3d 237, 246-47 (3d Cir. 1998).

> [Petitioner] told me he committed the crime, told me
> what happened to the gun, and, in fact, the person that
> removed the gun so they couldn't find the gun.
> Absolutely.  No doubt about that.

(N.T. 5/11/07, 103).  Counsel explained to petitioner that if he

testified, he had to tell the truth, and that if he did not tell

the truth, counsel had an ethical obligation to tell the court

(N.T. 5/11/07, 87-89, 114).  On PCRA appeal, petitioner

complained that attorney-client privilege should have prevented

disclosure, citing Pennsylvania Rule of Professional Conduct 3.3

(Candor Toward the Tribunal) (Brief for Appellant, 15; Exhibit

C).  However, even though an attorney may not refuse to offer

even false testimony by a defendant in a criminal matter, Rule

3.3(a)(3), an attorney must "take reasonable remedial measures"

when his client commits "criminal or fraudulent conduct," Rule

3.3(b), such as perjury.  Where necessary, those remedial

measures include "disclosure to the tribunal."  Rule 3.3(b).

Trial counsel was eminently reasonable in advising petitioner

that, if he gave perjured testimony, counsel would be ethically

obligated to be candid with the court about any fraud of which he

was aware.

The Pennsylvania Supreme Court rejected a similar

ineffectiveness claim in Commonwealth v. Jermyn, 620 A.2d 1128

(Pa. 1993), cert. denied, 510 U.S. 1049 (1994).  There, Jermyn

insisted upon taking the stand with the intention of making false

statements.  Knowing Jermyn's intentions, counsel declined to

participate in Jermyn's testimony except to ask whether he

desired to make a general statement to the jury.  When Jermyn

25

challenged trial counsel's conduct as ineffective assistance, the Supreme Court held:

> Counsel's treatment of the problem was reasonable, for while he was obligated to defer to his client's insistence on testifying, he was also obligated not to participate in the lie that he believed his client would state. The impact of counsel's conduct, thus, was to impede Jermyn's ability to lie to the jury. But Jermyn's ability to lie to the jury is not, of course, protected, and counsel cannot be ineffective for failing to promote it. This claim is without merit because counsel acted reasonably within the constraints of ethical requirements.

Jermyn, 620 A.2d at 1131 (footnote omitted) (quoting Nix v. Whiteside, 475 U.S. 157, 173, 106 S.Ct. 988, 997 (1986): "Whatever the scope of a constitutional right to testify, it is elementary that such a right does not extend to testifying falsely."). See Jermyn v. Horn, 1998 U.S. Dist. LEXIS 16939, * 144-150 (M.D. Pa. 1998) (agreeing with state supreme court's rejection of claim), affirmed on other grounds, Jermyn v. Horn, 266 F.3d 257 (3d Cir. 2001).

Indeed, in Nix v. Whiteside, supra, Whiteside consistently stated to counsel that he had not actually seen a gun, but that he was convinced the victim had a gun in his hand. About a week before trial, during preparation for direct examination, Whiteside for the first time told counsel he saw something "metallic" in the victim's hand. When asked about this, Whiteside responded: "[I]n Howard Cook's case there was a gun. If I don't say I saw a gun, I'm dead." 475 U.S. at 161, 106 S.Ct. at 991. When Whiteside insisted upon so testifying at trial, counsel advised him that if he did so, it would be

counsel's duty to advise the Court of what he was doing and that counsel felt he was committing perjury. Counsel also indicated that he would seek to withdraw if Whiteside insisted on committing perjury. Whiteside testified truthfully at trial and was convicted of second degree murder. Whiteside thereafter sought a new trial, claiming that trial counsel's conduct deprived him of his due process right to a fair trial. The state courts denied him relief. On federal habeas review, the Eighth Circuit granted the writ, finding counsel's threatened violation of client confidences breached the standards of effective representation set forth in Strickland. The United States Supreme Court reversed, holding that the Sixth Amendment right of a criminal defendant to assistance of counsel is not violated when an attorney refuses to cooperate with the defendant in presenting perjured testimony at his trial. The Court found that counsel treated Whiteside's proposed perjury in accord with professional standards, and that Whiteside's truthful testimony could not have prejudiced him under Strickland as a matter of law. 475 U.S. at 175-177; 106 S.Ct. at 998-999.

Here, as in Nix and Jermyn, trial counsel's refusal to suborn perjury by petitioner did not impinge upon petitioner's right to testify at trial. Counsel advised petitioner of the right to testify and explained that the right does not entitle a defendant to the complicity of his attorney in committing perjury (N.T. 5/11/07, 87-90, 114). This advise was consistent with trial counsel's ethical obligations both to the court and to

27

petitioner as his client.  See United States v. Smith, 104 Fed.
Appx. 266, 270-71 (3d Cir. 2004) (not precedential), cert.
denied, 547 U.S. 1188 (2006) (counsel acted ethically in advising
Smith that they would move to withdraw if Smith decided to
testify; counsel's refusal to assist Smith's perjury not
ineffectiveness).

Moreover, the record demonstrates that counsel's advice to
not testify was strategically sound.  Trial counsel explained at
the PCRA hearing that he advised petitioner not to testify at
trial for multiple reasons.  In addition to the inconsistency of
petitioner's intended testimony with his sworn statement and
private representations to trial counsel, petitioner's
suppression hearing testimony showed that petitioner would have
hurt his defense by testifying at trial.  During his suppression
hearing testimony, petitioner repeatedly contradicted himself and
comported himself in a manner that made him appear "dishonest"
(N.T. 5/11/07, 86-87, 104-107, 141-142).  Consequently, trial
counsel concluded that petitioner's testimony at trial would
damage the case (N.T. 5/11/07, 106-107) ("[petitioner] was a
horrible witness, not bad, horrible witness").  Trial counsel
accordingly advised petitioner not to testify, but counsel would
have "put him on the stand if he wanted to go there" (N.T.
5/11/07, 107).  However, after counsel explained to petitioner
"all of the things that I had seen, the problems, the positives,
the negatives," counsel asked him whether he wanted to testify,
and petitioner stated "I do not want to testify" (N.T. 5/11/07,

120). The PCRA trial court found counsel's testimony to be credible (Opinion, Byrd, J., at 4, attached to Exhibit C; N.T. 5/11/07, 6), and that finding, fully supported by the record, is binding on this federal habeas court.[12] 28 U.S.C. § 2254(e)(1); see Miller v. Fenton, 474 U.S. 104, 114 (1985) (state court's credibility determinations are binding on federal court in a subsequent habeas action); Marshall v. Lonberger, 459 U.S. 422 (1983) (Section 2254 (d) "gives federal habeas courts no license to redetermine credibility of witnesses whose demeanor has been observed by the state trial court and not by them"); LaVallee v. Della Rose, 410 U.S. 690, 694-95 (1973) (implicit credibility findings of state court are no less binding than explicit findings for purposes of habeas review); Campbell v. Vaughn, 209 F.3d 280, 289-90 (3d Cir. 2000), cert. denied, 121 S.Ct. 789 (2001) (same); Ahmad v. Redman, 782 F.2d 409, 413 (3d Cir. 1986) (same); see also United States v. Smith, 104 Fed. Appx. 266, *271 (3d Cir. 2004) (not precedential), cert. denied, 547 U.S. 1188 (2006) (Court of Appeals bound by district court's acceptance of the testimony of trial counsel that Smith assented to their recommendation that he not testify and rejection of Smith's contrary testimony, since the court's credibility determinations were not clearly erroneous).

_____

[12]The Pennsylvania Superior Court also made findings of fact consonant with those of Judge Byrd, see Commonwealth v. Gonzalez, slip op. at 2-4 (Exhibit C), which are entitled to deference. See Reinert v. Larkins, 379 F.3d 76, 94 (3d Cir. 2004), citing Sumner v. Mata, 449 U.S. 539, 101 S.Ct. 764, 66 L.Ed.2d 722 (1981).

Trial counsel thus clearly had a reasonable basis for advising petitioner not to testify. See Commonwealth v. Garrity, 500 A.2d 1106, 1111 (Pa. 1985) (counsel not ineffective for failing to call appellant who "could provide, from his own mouth, sufficient evidence to prove the Commonwealth's case," especially where he was "unsophisticated and consequently might not fare well under competent cross-examination"); Commonwealth v. Rivers, 557 A.2d 5, 8 (Pa. Super. 1989) (counsel not ineffective for failing to call appellant where appellant's proposed testimony was contradicted by other evidence and his demeanor while testifying would likely have prejudiced his case). Petitioner's ineffectiveness claim fails on this basis alone. See Strickland v. Washington, supra.

Moreover, petitioner cannot possibly show that he was prejudiced by counsel's advice not to testify. The prejudice element of the Strickland test requires the petitioner to prove that there is a reasonable probability that but for counsel's alleged ineffectiveness the result of the proceeding would have been different. In other words, it is petitioner's burden to prove that, had he testified at trial, there is a reasonable probability that he would not have been found guilty of second degree murder. Petitioner cannot possibly meet this substantial burden.

Even if petitioner had testified, it would have been extremely unlikely for his testimony to overcome the overwhelming contradictory evidence and serious questions as to his

30

credibility. His intended trial testimony would have contradicted his sworn confession, which was corroborated by ample, varied evidence: Petitioner's friend confirmed that the two each drank three beers at Fourth and Champlost Streets earlier in the evening. At the crime scene, police found the overhead interior light ripped from the ceiling of the victim's vehicle and a .45 caliber shell casing. The victim's fiancee testified that the light was intact when he left for work that evening. A search of petitioner's home revealed clothing and a hat he said he wore the night of the murder, as well as a shoe box and gun box matching the shoes and the gun petitioner described in his confession. The victim's employer testified that receipts from that night indicated the victim was carrying approximately $150 plus tips at the time. The victim's autopsy revealed that he died from a gunshot wound to the chest (N.T. 2/13/01, 157-158, 201-202; N.T. 2/14/01, 113-157, 209-210; N.T. 2/15/01, 6-8, 14-21).

Furthermore, petitioner's testimony regarding his confession at the suppression hearing was inconsistent both internally and with his intended trial testimony.[13] These inconsistencies, along with his demeanor during his suppression testimony, led trial counsel to conclude that petitioner's testimony would

---

[13]During the suppression hearing, petitioner's testimony was inconsistent in its allegations as to whether his sworn confession was partly or entirely untrue, whether he had fabricated the confession on his own or been forced to adopt fabrications by interviewing detectives, and whether he had the opportunity to review the confession before signing it (N.T. 2/13/01, 46, 48, 53-56, 59).

appear highly incredible in both form and substance at trial
(N.T. 5/11/07, 86-87, 104-107, 141-142). Moreover, the PCRA
trial court credited trial counsel's "version of the disputed
facts" over petitioner's (Opinion, Byrd J., at 4, attached to
Exhibit C; N.T. 5/18/07, 6), confirming trial counsel's concerns
about petitioner's credibility. Indeed, the PCRA trial court
found that "[petitioner's] PCRA testimony was not credible," and
that petitioner was not prejudiced at trial (N.T. 5/18/07, 7).

The Pennsylvania Superior Court's determination that trial
counsel rendered effective assistance is neither contrary to, nor
an unreasonable application of, <u>Strickland</u> and <u>Nix</u>. <u>Commonwealth
v. Gonzalez</u>, Memorandum Opinion at 2-4 (Exhibit D); Opinion,
Byrd, J., 3-5 (attached to Exhibit C). This claim thus provides
no basis for federal habeas relief. <u>See</u> 28 U.S.C. § 2254(d)(1);
<u>Williams v. Taylor</u>, <u>supra</u>.

### III. PETITIONER'S CLAIM THAT TRIAL COUNSEL WAS INEFFECTIVE FOR FAILING TO CALL ALIBI AND CHARACTER WITNESSES PROVIDES NO BASIS FOR FEDERAL HABEAS RELIEF.

Petitioner claims that trial counsel was ineffective for not
calling as witnesses his stepfather, Kevin Clark, who allegedly
would have testified as an alibi[14] and a character witness, and

---

[14]In his affidavit, Mr. Clark also stated that he provided
trial counsel with the name of "another alibi witness, Gabe's
fiancee, Delphine McAliley." <u>See</u> Exhibit B to Brief for
Appellant, attached as Exhibit A. Petitioner, however, failed to
proffer an affidavit from Ms. McAliley. He thus utterly failed
to meet his burden of proof as to this alleged witness. In any
event, even if petitioner had proffered an affidavit from this
alleged alibi witness, his ineffectiveness claim would fail for
the same reasons his claim as to Mr. Clark fails.

other alleged character witnesses. As the state courts reasonably concluded, this claim provides no basis for relief.

Where petitioner contends that trial counsel was ineffective because he failed to interview or call a witness, petitioner must at a minimum show that the witness was available to testify at the time of trial and identify what the precise nature of their testimony would be. See, e.g., Zettlemoyer v. Fulcomer, 923 F.2d 284 (3d Cir.), cert. denied, 502 U.S. 902 (1991) (habeas petitioner must at a minimum allege witness was available); United States v. Dawson, 857 F.2d 923 (3d Cir. 1988) (no relief where defendant did not allege that witnesses were ready to volunteer their testimony or that if called, they would have testified); Alexander v. McCoffer, 775 F.2d 595 (5th Cir. 1985) (witness must be shown to have been available at time of trial); accord, Jones v. Smith, 772 F.2d 668 (11th Cir. 1985), cert. denied, 474 U.S. 1073 (1986). See also Lewis v. Mazurkiewicz, 915 F.2d 106, 115 (3d Cir. 1990) (prejudice component of Strickland not established where petitioner did not show that testimony of potential witness, whom counsel failed to interview, would have supported claim of self-defense); United States v. Debango, 780 F.2d 81 (D.C. Cir. 1986) (failure to introduce evidence of what missing witness would say precludes finding of prejudice from failure of counsel to interview or call witness); Schwander v. Blackburn, 750 F.2d 494 (5th Cir. 1985) (where only evidence of what missing witness would say is from defendant, ineffectiveness claims are viewed with great caution).

When challenging counsel's performance for failing to call a witness, petitioner was required to prove: (1) the witness existed; (2) the witness was available; (3) counsel was informed of the existence of the witness or counsel should otherwise have known of him; (4) the witness was prepared to cooperate and testify for defendant at trial; and (5) the absence of the testimony prejudiced defendant so as to deny him a fair trial. Commonwealth v. Petras, 368 Pa. Super. 372, 534 A.2d 483, 485 (1987); Commonwealth v. Griffin, 357 Pa. Super. 308, 515 A.2d 1382, 1387-88 (1986), appeal denied, 515 Pa. 574, 527 A.2d 535 (1987); accord, Commonwealth v. Woods, 394 Pa. Super. 223, 575 A.2d 601, 604-605 (1990), appeal denied, 530 Pa. 654, 608 A.2d 30 (1992) (collecting cases). Petitioner wholly failed to meet his burden of proof.

As the Pennsylvania Superior Court reasonably concluded on direct appeal, trial counsel's decision not to call petitioner's stepfather as an alibi witness was a reasonable, strategic one. "[Petitioner's] stepfather's obvious bias would have rendered his testimony virtually meaningless." Commonwealth v. Gonzales, Memorandum Opinion at 17-18 (Exhibit B). See Hess v. Mazurkiewicz, 153 F.3d 905, 909 (3d Cir. 1998), quoting Romero v. Tansy, 46 F.3d 1024, 1030 (10th Cir. 1995) ("alibi testimony by a defendant's family members is of significantly less exculpatory value than the testimony of an objective witness"); Diggs v. Owens, 833 F.2d 439, 446 (3d Cir. 1987), cert. denied, 485 U.S. 979, reh. denied, 486 U.S. 1018 ("[o]bviously [wife's alibi]

34

testimony would have appeared self-serving").  Trial counsel
cannot be deemed ineffective in this regard.  See Diggs v. Owens,
supra, 833 F.2d at 445-46 (decision to not call petitioner's wife
as an alibi witness reasonable, where testimony would have
appeared self-serving and might have caused jury to focus on
contrived defense rather than weaknesses in state's case);
Commonwealth v. Davis, 554 A.2d 104, 111 (Pa. Super. 1989),
appeal denied, 571 A.2d 380 (1989) (decision not to call alibi
witness not ineffectiveness where, "[i]f successfully impeached,
the alibi witness could have done more harm than good" and where,
even if unimpeached, alibi evidence would have been of limited
value as coming from person sharing residence with Davis, and
would have been limited to assertion that, during relevant
fifteen minute period, Davis was alone with alibi witness "in a
house close to the scene of the incident"; decision not to call
such a witness "is obviously a matter of trial tactics not
subject to a challenge on ineffectiveness grounds after the
fact").

     Moreover, trial counsel testified at the PCRA evidentiary
hearing that petitioner admitted to counsel that he committed the
instant crime and that counsel would not permit petitioner to
give perjured testimony at trial (N.T. 5/11/07, 87-89, 102-103,
114).  Given trial counsel's testimony, which the PCRA trial
court found credible (Opinion, Byrd, J., at 4, attached to
Exhibit C; N.T. 5/11/07, 6), it is clear that counsel did not
call petitioner's stepfather as an alibi witness because

petitioner's proposed alibi defense constituted perjury. Counsel clearly was not ineffective in refusing to present perjured testimony. See Nix v. Whiteside, supra and discussion above at 25-27.

Petitioner's claim that trial counsel was ineffective for not presenting character testimony is likewise unavailing, since the proffered testimony would not have been admissible. Evidence of the reputation of a defendant is admissible in Pennsylvania only if it passes a strict relevancy test. A defendant must identify specific character traits for which he has a good reputation in the community that relate to the criminal charges against him. Character evidence is admissible only as to a defendant's **reputation** in the community regarding the particular character trait at issue. Commonwealth v. Morley, 658 A.2d 1357, 1363 (Pa. Super. 1995) (en banc), aff'd 681 A.2d 1254 (Pa. 1996). Here, with the sole exception of Kevin Clark, none of petitioner's alleged character witnesses purported to have been prepared to testify as to petitioner's **reputation** in the community for peacefulness and nonviolence -- the only character trait relevant to the crime of murder. Instead, the alleged witnesses purport to render their personal **opinions** about petitioner and his family, e.g., that petitioner "is a very respectable young man" and "comes from a family of unity, love and well mannered" (Stephanie Matthews); that petitioner is "very nice to the younger children" and "never used bad language in front of me" (Dolores Samoni); that petitioner is "quiet" and

"helpful" (Charlotte Greenwood); that he is a "fine young man" (Joyce Johnson); that he is "productive," "com[es] from a religious family," and "received his drivers[sic] license" at the earliest opportunity (Sheila Sayles); that he is an "excellent father" and was a "star on the football field" (Selena Johnson);[15] that he is a "great student and a great athlete" (Richette McAliley); and that he is "quiet and respectful" (Thomas Brady).[16] Two (Stephanie Matthews and Tonya Stief) purport to give their personal opinions regarding petitioner's guilt. Such observations simply are not admissible character evidence. See Commonwealth v. Mason, 628 A.2d 1141, 1150 (Pa. Super. 1993) ("[p]ersonal opinions regarding an accused's character are not admissible as reputation and character evidence"); Commonwealth v. Rue, 524 A.2d 973, 975 (1987) (same).

Indeed, the Pennsylvania Superior Court found that the proffered testimony was not admissible as character evidence as a matter of state evidentiary law. Commonwealth v. Gonzales, Memorandum Opinion at 16-17 (Exhibit B). The state court's interpretation and application of state law is binding on a

---

[15]Ms. Johnson stated that petitioner was her "boyfriend as well as the father of our daughter." Ms. Johnson would appear to be a different person than petitioner's alleged fiance, Delphine McAliley.

[16]Several of the affidavits are "form," i.e., "fill-in-the-blanks" affidavits with precisely the same wording (e.g., Lavette King, Christian Clark, and Gloria Slocum). These affidavits state only that the affiant "would have given testimony as to [petitioner's] good character." However, the affidavits do not state that the affiant would have, or was even able to, testify as to petitioner's reputation in the community for peacefulness. Accordingly, they are of no evidentiary value.

federal habeas court, <u>Estelle v. McGuire</u>, 502 U.S. 62 (1991), and thus <u>precludes</u> a finding that trial counsel was ineffective for failing to present the proffered character witnesses, since counsel is never ineffective for failing to pursue a meritless course of action. <u>See</u> <u>United States v. Sanders</u>, 165 F.3d 248, 253 (3d Cir. 1999) ("There can be no Sixth Amendment deprivation of effective counsel based on an attorney's failure to raise a meritless argument."); <u>Commonwealth v. Mickens</u>, 597 A.2d 1196 (Pa. Super. 1991) (counsel not ineffective for failing to present character witnesses whose proposed testimony did not qualify as admissible character evidence).

As for petitioner's stepfather, Kevin Clark, the only proposed character witness purporting to testify as to petitioner's reputation for peacefulness, trial counsel may well have determined that such testimony from an obviously biased source would have been neither credible nor helpful to petitioner. <u>See</u> <u>Commonwealth v. Mickens</u>, <u>supra</u>, 597 A.2d at 1203-04 (trial counsel was not ineffective for failing to call relatives of Mickens as character witnesses because, in his experience, "family members generally lacked credibility as character witnesses due to their obvious bias in favor of the accused"). <u>See</u> <u>also</u> <u>Hess v. Mazurkiewicz</u>, <u>supra</u>, 153 F.3d at 909; <u>Diggs v. Owens</u>, <u>supra</u>, 833 F.3d at 446 (both recognizing the obvious bias of familial witnesses).[17]  The Pennsylvania

_____

[17]Moreover, the prosecutor argued in her closing, without objection, that Mr. Clark spoke to Mr. Serota after petitioner
(continued...)

Superior Court reasonably concluded that the absence of Mr. Clark's character testimony did not prejudice petitioner, and that counsel cannot be deemed ineffective for failing to call him as a character witness. <u>Commonwealth v. Gonzales</u>, Memorandum Opinion at 18 (Exhibit B).

Because the state superior court's resolution of petitioner's complaint about counsel's representation constituted a reasonable application of the standards governing ineffectiveness claims as set forth by the United States Supreme Court in <u>Strickland</u>, his claim provides no basis for federal habeas relief.

### IV. PETITIONER'S CLAIM THAT TRIAL COUNSEL WAS INEFFECTIVE FOR NOT OBJECTING TO THE ADMISSION OF EVIDENCE CONCERNING HIS ARREST FOR RETAIL THEFT PROVIDES NO BASIS FOR FEDERAL HABEAS RELIEF.

Petitioner claims that trial counsel was ineffective for not objecting to the admission of evidence concerning his arrest for retail theft. This claim provides no basis for federal habeas relief.

---

[17](...continued)
gave his statement and that Mr. Clark might have moved the gun that petitioner admitted throwing into his backyard (N.T. 2/20/01, 1307-1308). Indeed, at the PCRA evidentiary hearing, trial counsel testified that "[petitioner] told me he committed the crime, told me what happened to the gun, and, in fact, the person that removed the gun so they couldn't find the gun" (N.T. 5/11/07, 103). Had Mr. Clark testified at trial, he would have been open to cross-examination on this theory of bias, which may have been very damaging to the defense. <u>See</u> <u>Commonwealth v. Peterkin</u>, 649 A.2d 121, 124 (Pa. 1994), <u>cert</u>. <u>denied</u>, 479 U.S. 1070 (1987) (trial counsel had reasonable basis for not presenting character testimony in light of concern that potential harm from cross-examination of witnesses outweighed the doubtful value of their testimony).

Trial counsel's decision to not object to certain details concerning petitioner's arrest for retail theft resulted from a tactical choice to attempt to use other details concerning that arrest in petitioner's favor. During an **in camera** discussion with counsel concerning petitioner's arrest for shoplifting, the trial court stated that it would only allow the admission of evidence that petitioner was in custody on an "unrelated charge" when he was taken to Homicide (N.T. 2/13/01, 812). The prosecutor argued that the arrest for shoplifting should be admitted because it corroborated petitioner's statement in his confession that he wanted to get arrested because he felt guilty about the murder (N.T. 2/13/01, 813-814). Defense counsel indicated that he might want the information regarding the arrest for retail theft to be admitted because petitioner apparently went back to the store and tried to pay for the sneakers, and this would be inconsistent with his trying to get caught because he felt guilty (N.T. 2/13/01, 814). Counsel stated that he wished to speak with his client concerning the matter, and the trial court permitted counsel to decide the matter after consultation with petitioner (N.T. 2/13/01, 815-817).

The following day, the Commonwealth introduced evidence concerning the arrest for retail theft through the testimony of Officer Sarver. Trial counsel did not object (except on the basis of hearsay as to what the security guard told Officer Sarver). Instead, on cross-examination, counsel attempted to establish that petitioner tried to return to the sporting goods

store to pay for the sneakers, thereby undermining the notion
that he was trying to get caught because he felt guilty about the
murder (N.T. 2/14/01, 899-907). Petitioner and his counsel thus
clearly agreed to make affirmative use of the circumstances of
the retail theft arrest. Given petitioner's confession and the
relative unimportance that the jury would likely attach to the
shoplifting arrest in its murder deliberations, counsel's course
of action clearly had a reasonable strategic basis and did not
constitute ineffective assistance. See Strickland v. Washington,
supra; Commonwealth v. O'Donnell, 740 A.2d 198, 206 (Pa. 1999)
(because trial counsel was "left with few strategic options given
Appellant's confession and the other evidence of [her] guilt,"
trial counsel was not ineffective for permitting references to
O'Donnell's drug addiction as part of strategy to convince jury
that she had every reason to keep victim, who gave her money,
alive).

As the Pennsylvania Superior Court reasonably concluded,
trial counsel was not ineffective in failing to object to the
admission of petitioner's retail theft arrest:

> ..."Appellant's counsel was faced with a rather
> difficult challenge of having to deal with Appellant's
> statement to the police that he committed the theft
> because he felt guilty for shooting Green and he wanted
> to get caught. Although Appellant's statement had yet
> to be read to the jury, counsel obviously knew it was
> going to come in at some point in the Commonwealth's
> case. Faced with this challenge, counsel attempted to
> show Appellant tried to pay for the sneakers. This
> tactic was an effort to rebut the inference that
> Appellant simply wanted to get caught for killing
> Green. Appellant's counsel's attempt to rebut the
> inference had a reasonable basis. Therefore, counsel's
> failure to object does not constitute ineffective

assistance of counsel.  <u>See</u> <u>Penrose</u>, <u>supra</u>.  Moreover,
the trial court informed Appellant's counsel that it
was going to allow the Commonwealth to state Appellant
was in custody on "an unrelated charge."  Appellant had
been charged with a violent murder.  Rather than allow
the jury to speculate as to what the "unrelated charge"
was, Appellant's counsel allowed [the] jury to hear
Appellant was in jail for a comparatively minor, non-
violent offense, so he could present more valuable
refutation.  Under the facts of this case, we conclude
counsel's decision to allow the challenged evidence was
reasonable.  <u>Id</u>.  Therefore, Appellant's third issue
raised on appeal must fail.

<u>Commonwealth v. Gonzales</u>, Memorandum Opinion, at 14-15 (Exhibit
B).

The Pennsylvania Superior Court's rejection of petitioner's
claim of counsel ineffectiveness is neither contrary to, nor an
unreasonable application of, <u>Strickland</u>.

In any event, the circumstances of petitioner's arrest for
retail theft were properly admitted notwithstanding trial
counsel's acquiescence.  Under Pennsylvania law, evidence of a
criminal defendant's other crimes is prohibited only if it is
offered <u>solely</u> to show the defendant's bad character or
propensity for crime.  <u>Commonwealth v. Stiffler</u>, 441 Pa. Super.
377, 657 A.2d 973, 975 (1995) (citing <u>Commonwealth v. Lark</u>, 518
Pa. 290, 543 A.2d 491 (1988)) (emphasis in original).  Evidence
of other crimes <u>is</u> admissible, however, "'in special
circumstances where the evidence is relevant for some other
legitimate purpose and not merely to prejudice the [defendant] by
showing him to be a person of bad character.'"  <u>Id.</u>  For example,
evidence of prior crimes may be admissible where the evidence
tends to establish, <u>inter alia</u>, motive, intent, or malice or

42

where the prior crime was part of a chain or sequence of events
which formed the history of the case and was part of its natural
development. Commonwealth v. Stiffler, supra at 975-76;
Commonwealth v. Robinson, 682 A.2d 831, 835 (Pa. Super. 1996).
The latter special circumstance, sometimes referred to as the
"res gestae" exception to the general proscription against
evidence of other crimes, is also known as the complete story
rationale, i.e., evidence of other crimes is admissible to
"complete the story of the crime on trial by proving its
immediate context of happenings near in time and place."
Stiffler, supra (quoting McCormick, Evidence, § 190 (2d ed.
1970)). See also Commonwealth v. Marshall, 568 A.2d 590, 596
(Pa. 1989) (evidence of other crimes was properly admitted where
it corroborated testimony of other witnesses that linked Marshall
to the events on trial).

Here, in his confession, petitioner stated that he stole the
sneaks hoping to get caught for the murder (N.T. 2/14/01, 1011)
("I had the money for them, but I was like turning myself in
'cause I felt so bad about this."). This admission makes sense
only if further details of petitioner's arrest for retail theft
were made known to the jury. Those details were admissible to
put petitioner's statement in context, in order to "complete the
story" of the robbery and murder, and petitioner's admitted
attempt to "turn [him]self in" for those crimes.[18]

---

[18]Petitioner also claimed in the state superior court that
the trial court improperly overruled his objection to Mr. Jabar's
(continued...)

Moreover, the trial court instructed the jury to not consider the evidence concerning the retail theft as proof of petitioner's guilt:

> Now, in this case you heard evidence tending to prove that this defendant may have committed some other improper conduct for which he is not on trial. I'm speaking of the testimony to the effect that the defendant was arrested on March 1st of the year 2000 for retail theft. That evidence is before you for a limited purpose and that's because it shows the circumstances in this case. It must not be considered by you in any way other than for that purpose. You must not regard the evidence as showing that the defendant is a person of bad character or criminal tendencies from which you might be inclined to infer guilt. If you find the defendant guilty, it must be because you're convinced by the evidence that he committed the crimes charged, not because you believe he is wicked or may have committed some other crime.

(N.T. 2/20/01, 1354). The jury must be presumed to have followed the trial court's instructions. Weeks v. Angelone, 120 S.Ct. 727, 733 (2000); Greer v. Miller, 483 U.S. 756 (1987); Francis v. Franklin, 471 U.S. 307, 325 n.9 (1985); Parker v. Randolph, 442 U.S. 62, 75 n.7 (1979) ("The 'rule,' indeed, the premise upon which the system of jury trials functions under the American judicial system -- is that juries can be trusted to follow the trial court's instructions"); Lesko v. Owens, 881 F.2d 44, 55 (3d Cir. 1989), cert. denied, 493 U.S. 1036 (1990) (limiting

---

[18](...continued)
testimony that he was drinking with petitioner the night before petitioner was "locked up" for stealing "some sneakers" (N.T. 2/15/01, 1096-1097). As the prosecutor stated to the court, this evidence was offered not to show the fact of the arrest, or for the truth of the matter asserted, but rather, to establish the timing of Mr. Jabar's recollection of the night he drank with petitioner. Accordingly, this testimony was likewise admissible under the res gestae exception.

instruction forestalled any potential for unfair prejudice by admission of evidence of prior murder); <u>Commonwealth v. Brewington</u>, 740 A.2d 247, 256 (Pa. Super. 1999) (cautionary instruction eliminated any possible prejudice from admission of other crimes evidence).  This claim provides no basis for federal habeas relief.

### CONCLUSION

For the foregoing reasons, respondents respectfully request that the petition for writ of habeas corpus be denied without a hearing.

Respectfully submitted,

MARILYN F. MURRAY
Assistant District Attorney

THOMAS W. DOLGENOS
Chief, Federal Litigation

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA


GABRIEL ROBERT GONZALEZ         :        CIVIL ACTION

    V.                              :

RANDALL BRITTON, et al.         :        NO. 09-2029


### CERTIFICATE OF SERVICE


I, MARILYN F. MURRAY, hereby certify that on September 11, 2009, a copy of the foregoing pleading was served by placing same, first class postage prepaid, in the United States Mail addressed to:


       Gabriel Robert Gonzalez, No. EN-4241
       SCI-Houtzdale
       P.O. Box 1000
       Houtzdale, PA  16698


       MARILYN F. MURRAY
       Assistant District Attorney
       District Attorney's Office
       Three South Penn Square
       Corner of Juniper & S. Penn Square
       Philadelphia, PA   19107
       (215) 686-5704