EXHIBIT A

IN THE SUPERIOR COURT OF PENNSYLVANIA
PHILADELPHIA DISTRICT

---

NO. 2019 EDA 2001

---

COMMONWEALTH OF PENNSYLVANIA

APPEALS

NOV 27 2001

DISTRICT ATTORNEY'S OFFICE   v.

GABRIEL GONZALES,
Appellant

---

BRIEF FOR APPELLANT

---

Appeal from the Judgment of Sentence entered on February 21, 2001 in the Court of Common Pleas of Philadelphia County on Bill of Information, 0352 of the March Term of 2000.

---


COPY
ORIGINAL FILED IN SUPERIOR COURT
NOV 2 6 2001
EASTERN DISTRICT

**STEPHEN ROBERT LaCHEEN and ASSOCIATES**
BY: MARK S. GREENBERG, ESQUIRE
Identification No. 35638
225 South 15th Street
31st Floor, Lewis Tower Building
Philadelphia, Pennsylvania 19102
(215) 735-5900
(215) 735-4649 (Fax)
**ATTORNEY FOR APPELLANT**

## **TABLE OF CONTENTS**

**PAGE**

TABLE OF AUTHORITIES. . . . . . . . . . . . . . . . . . . . .   ii

STATEMENT OF JURISDICTION. . . . . . . . . . . . . . . . . .   1

STATEMENT OF SCOPE AND STANDARD OF REVIEW. . . . . . . . . .   1

ORDER IN QUESTION. . . . . . . . . . . . . . . . . . . . . .   3

STATEMENT OF QUESTIONS INVOLVED . . . . . . . . . . . . . . . 4

STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . 5

SUMMARY OF ARGUMENT . . . . . . . . . . . . . . . . . . . . . 10

ARGUMENT  . . . . . . . . . . . . . . . . . . . . . . . . . . 12

       A.   THE LOWER COURT ERRED IN NOT SUPPRESSING THE ALLEGED CONFESSION GIVEN BY MR. GONZALES. . . . . . . . . . . . . . . . .

       B.   MR. GONZALES WAS DENIED A FAIR TRIAL WITH THE INTRODUCTION OF AN ANONYMOUS TELEPHONE CALL CONNECTING HIM TO THE HOMICIDE AND WITH TRIAL COUNSEL'S FAILURE TO OBJECT TO THE INDIRECT ADMISSION OF THIS HEARSAY. . . . . . . . . . . . . . . . . 14

       C.   TRIAL COUNSEL WAS INEFFECTIVE IN FAILING TO OBJECT TO TESTIMONY CONNECTING MR. GONZALES TO A UNRELATED RETAIL THEFT. . . . . 19

       D.   TRIAL COUNSEL WAS INEFFECTIVE IN NOT CALLING CHARACTER WITNESSES AND AN ALIBI WITNESS EVEN THOUGH THEIR NAMES HAD BEEN SUPPLIED TO COUNSEL BEFORE TRIAL. . . . . . . 20

CONCLUSION  . . . . . . . . . . . . . . . . . . . . . . . . . 24

EXHIBIT A – LETTER EXPLAINING ABSENCE OF TRIAL COURT OPINION

EXHIBIT B – AFFIDAVITS OF WITNESSES

i

## TABLE OF AUTHORITIES

**PAGE**

Brown v. Mississippi, 297 U.S. 278 (1936). . . . . . . . . .   12

Buehl v. Vaughn, 166 F.3d 163 (3d Cir. 1999). . . . . . . .

Commonwealth v. Beckham, 525 A2d 782 (Pa. Super 1987). . . . . . 21

Commonwealth v. Bond, 396 A2d 414, (Pa. Super 1978). .   .   19, 20

Commonwealth v. Carlson, 705 A2d 468 (Pa. Super 1998). . . . . . .1

Commonwealth v. Farris, 380 A2d 486 (Pa. Super 1977). . . . .  16

Commonwealth v. Gillespie, 620 A2d 1143 (Pa. Super 1993). . . . .21

Commonwealth v. Goodwin, 333 A2d 892 (Pa. 1975). . . . . . . . . 12

Commonwealth v. Kubiac, 550 A2d 219 (Pa. Super 1998). . . . . . .2

Commonwealth v. Moore, 715 A2d 448 (Pa. Super 1998). . . . .  1, 17

Commonwealth v. Perry, 379 A2d 545 (Pa. 1977). . . . . . . . . . 12

Commonwealth v. Petras, 534 A2d 483 (Pa. Super 1987). . . . . . .21

Commonwealth v. Smith, 568 A2d 600 (Pa. 1989). . . . . . . . . . 18

Commonwealth v. Spruill, 391 A2d 1048 (Pa. 1978). . . . . . . . .19

Commonwealth v. Thomas, 539 A2d 829 (Pa. Super 1988). . . . . . .16

Commonwealth v. Thomas, 578 A2d 422 (Pa. Super 1990). . . . . . .15

Commonwealth v. Tribble, 467 A2d 1130 (Pa. 1983). . . . . . . .  2

Commonwealth v. Wright, 376 A2d 988 (Pa. 1977). . . . . . . 12, 13

Dutton v. Evans, 400 U.S. 74 (1970). . . . . . . . . . . . . . 18

Rogers v. Richmond, 365 U.S. 534 (1961). . . . . . . . . . . . 12

Schneckloth v. Bustamonte, 412 U.S. 218 (1973). . . . . . . . 12

Strickland v. Washington, 466 U.S. 668 (1984). . . . . . . . . 22

United States v. Nino, 878 F.2d 101 (3d Cir. 1989). . . . . . .22

ii

## STATEMENT OF JURISDICTION

This Court's jurisdiction to hear an appeal from the Court of Common Pleas is established by §2 of the Judiciary Act of 1976, P.L. 586, 142, 42 Pa. C.S.A. §742.

## STATEMENT OF SCOPE AND STANDARD OF REVIEW

The standard and scope of review for ineffective assistance of counsel, is a three pronged test: whether the claim is of arguable merit; whether counsel's omission or action had no reasonable basis designed to effectuate the client's interests; and whether counsel's ineffectiveness undermined the truth determining process so as to call the reliability of the verdict into question.  Commonwealth v. Moore, 715 A.2d 448 (Pa. Super. 1998).

The standard and scope of review governing the denial of a motion to suppress evidence is whether the record supports the suppression court's factual findings and the legitimacy of the inferences and legal conclusions drawn from those findings. In making this determination, the appellate court will only consider the evidence of the prosecution's witnesses and so much of the evidence for the defense as, fairly read in the context of the record as a whole, remains uncontradicted. When the factual findings of the suppression court are supported by the evidence, the appellate court may reverse only if there is an error in the legal conclusions drawn from those factual findings. Commonwealth v. Carlson, 705 A2d 468 (Pa. Super. 1998).

The admission or exclusion of evidence is within the sound discretion of the trial court and will not be overturned absent an abuse of discretion. An abuse of discretion is not merely an error of judgement, but is rather the overriding or misapplication of the law or the exercise of judgment that is

1

manifestly unreasonable, or the result of bias, prejudice, ill-will or partiality, as shown by the evidence or the record. <u>Commonwealth v. Kubiac</u>, 550 A2d 219 (Pa. Super 1998).

When two equally reasonable and mutually inconsistent inferences can be drawn from the same set of circumstances, a jury must not be permitted to guess which inference it will adopt, especially when one of the two guesses may result in depriving a defendant of his life or his liberty. <u>Commonwealth v. Tribble</u>, 467 A2d 1130 (Pa. 1983).

**<u>ORDER IN QUESTION</u>**

The Order presented for review is the judgment of sentence entered of February 21, 2001 and reaffirmed on June 7, 2001 after the withdrawal of post sentence motions.

## STATEMENT OF THE QUESTIONS INVOLVED

A. WHETHER THE LOWER COURT ERRED IN NOT SUPPRESSING THE ALLEGED CONFESSION GIVEN BY MR. GONZALES?

B. WHETHER MR. GONZALES WAS DENIED A FAIR TRIAL WITH THE INTRODUCTION OF AN ANONYMOUS TELEPHONE CALL CONNECTING HIM TO THE HOMICIDE AND WITH TRIAL COUNSEL'S FAILURE TO OBJECT TO THE INDIRECT ADMISSION OF THIS HEARSAY?

C. WHETHER TRIAL COUNSEL WAS INEFFECTIVE IN FAILING TO OBJECT TO TESTIMONY CONNECTING MR. GONZALES TO AN UNRELATED RETAIL THEFT?

D. WHETHER TRIAL COUNSEL WAS INEFFECTIVE IN NOT CALLING CHARACTER WITNESSES AND ALIBI WITNESSES EVEN THOUGH THEIR NAMES HAD BEEN SUPPLIED TO COUNSEL BEFORE TRIAL?

## STATEMENT OF THE CASE

Gabriel Gonzales was found guilty by a jury of murder in the second degree, robbery (felony of the first degree) and possession of an instrument of crime, and sentenced to life imprisonment.(N.T. 1389; 1392). The trial was held before the Honorable David N. Savitt and began on February 6, 2001 with jury selection and ended on February 21, 2001 with the verdict and sentencing. A protracted hearing on the Mr. Gonzales's motion to suppress a statement he allegedly gave to homicide detectives was held on February 12-13, 2001 and denied on February 13, 2001. (N.T. 517-759). Mr. Gonzales was represented at the motion to suppress hearing, trial and sentencing by Tariq El-Shabazz, Esquire.

After conviction and sentence, Mr. Gonzales retained undersigned counsel who filed a post sentence motion pursuant to Pa. R. Crim. P. 1410 on March 1, 2001. This post sentence motion was later withdrawn on June 7, 2001. An appeal was noticed to this Court on July 2, 2001. On September 6, 2001, the Clerk of Quarter Sessions, Philadelphia County, wrote a letter to the Clerk of this Court stating that Judge Savitt "...does not issue opinions on [sic] this type of case. . ." Exhibit A.

The instant prosecution stemmed from the February 29, 2000 shooting death of Vincent Green, a pizza delivery man for George's Old English Pizza, who was shot inside his car parked outside the pizza shop at approximately 11:40 p.m. and died minutes later after staggering from the car to the vestibule of the pizza shop.(N.T. 836). Mr. Green died in the presence of Bruce Sulpizio, the manager of the pizza shop, who had given Green a delivery just before he was shot. (N.T. 836). Although Mr. Sulpizio did not see the shooting, he did see a person with a gun in his hand inside or near Mr. Green's car, run south away from the pizzeria. (N.T. 840). Mr. Sulpizio described the gunman as 5'8"-5'9" with a "chunky" build. (N.T. 837; 847). Although Mr. Sulpizio knew Mr. Gonzales as a

5

customer, he did not identify him as the person with the gun. (N.T. 847-48). Indeed, in a statement given to the police shortly after the shooting, Mr. Sulpizio stated that he had never seen the gunman before. (N.T. 851).

A second witness to see the fleeing suspect was Police Officer Francisco Hernandez who arrived on the scene at 11:42 p.m., two minutes after the shooting and who observed a man fitting the description of the shooter broadcast over police radio. (N.T. 861-63). Officer Hernandez described the suspect as a dark male with an Afro wearing a dark suit with what appeared to be a red sweater or hoodie-type around his neck.(N.T. 876). The bright hoodie or sweater worn by the person seen by Officer Hernandez was consistent with the bright hat or sweater Mr. Sulpizio noticed the gunman wearing. (N.T. 851). Officer Hernandez observed the individual enter into one of the homes on the 5900 block of Lawrence Street. (N.T. 863). Significantly, Officer Hernandez was unable to identify Mr. Gonzales as the fleeing suspect.(N.T. 876).

Thus, the identity of the shooter vanished with the disappearance of the fleeing suspect.

The Commonwealth built its case against Mr. Gonzales on the edifice of a shoplifting charge brought against him on March 1, 2000 and an anonymous phone call made to the police identifying him as a suspect. The unfolding of these events is as follows. Police Officer Christopher Sarver testified that he was flagged down by an employee of Modell's Sporting Good Store in the Olney Shopping Center. (N.T. 888). Based on information received, Officer Sarver arrested Mr. Gonzales for retail theft. (N.T. 892). Judge Savitt, recognizing the prejudicial nature of this evidence, invited counsel to object to its admission at a prior in-camera hearing. (N.T. 812-15). No objection was forthcoming. Mr. Gonzales's involvement in an unrelated retail theft was again brought up later in the trial through the testimony of Shamiddin Jabar, a friend of

6

Mr. Gonzales who was permitted to testify over objection that the mother of Mr. Gonzales told Mr. Jabar that Mr. Gonzales had stolen some sneakers. (N.T. 1096-97). The court allowed this testimony based on the Commonwealth's representation that it was not being offered for the truth of the matter. (N.T. 1096-97).

After Mr. Gonzales was arrested for the retail theft by Officer Sarver, he was taken to the 35th police precinct for processing. (N.T. 892). During Mr. Gonzales's stay in a holding cell at the police precinct, Detective Gregory Holman testified that he received an anonymous phone call from someone who identified Mr. Gonzales by name. (N.T. 927). The Commonwealth's next question was ". . . did they [sic] make a connection between Gabriel Gonzalez and the pizza man shooting?" (N.T. 927). An objection to this question was sustained, (N.T. 927).

The Commonwealth then called Detective Edward Davis to the stand who testified that he took a second phone call from the anonymous caller, reviewed his summary sheets,[1] contacted the Homicide Unit of the Philadelphia Police Department and arranged for Mr. Gonzales to be transported to the Homicide Unit for processing. (N.T. 931-33). Thus, the Commonwealth did indirectly through the actions of Detective Davis in response to the anonymous phone call what it couldn't do directly: connect Mr. Gonzales to the shooting death of Mr. Green through the phone call of an anonymous caller.

The stage was now set for the introduction of the confession allegedly given by Mr. Gonzales. The so-called confession was the heart of the Commonwealth's case against Mr. Gonzales and was the subject of a motion to suppress hearing. At the hearing, the Mr. Gonzales testified that he repeatedly told two homicide detectives,

---

[1]Summary sheets, Detective Davis testified, are "jobs" investigated by Division detectives. (N.T.931-33).

William Gross and Lawrence McGuffin, that he did not want to answer any questions and that he wanted a lawyer present if he was to be interrogated. (N.T. 687-90). Indeed, Mr. Gonzales had asserted his constitutional rights earlier at the 35th police precinct when police attempted to question him about the retail theft matter.(N.T. 521).

After Mr. Gonzales repeatedly requested counsel, he was struck twice in the face by Detective Gross and fell to the floor. (N.T. 691-92). While curled up on the floor, Mr. Gonzales was choked by Detective Gross and eventually gave a false confession in order to avoid continued abuse. (N.T. 692).

Mr. Gonzales's testimony was corroborated by two sources, his stepfather, Kevin Clark and Steven Serota, Esquire, who went to the homicide division on the morning of March 2, 2000 to meet with Mr. Gonzales in response to a telephone call he had received earlier that morning from Mr. Clark. Mr. Serota testified that when he saw Mr. Gonzales at approximately 11:20 a.m. on March 2, 2000, he observed a 3/8" line encircling Mr. Gonzales's entire neck which extended from hair line to hair line. (N.T. 662). Serota described the injury as "very red" with the "skin rubbed off." (N.T. 662). Mr. Gonzales told Mr. Serota that he gave a statement only after having been beaten and choked by the police. (N.T. 662). Indeed, Mr. Serota was initially refused entry to see his client and only succeeded in meeting with him after threatening to bring the stonewalling to the attention of the motion-to-suppress-court. (N.T. 656). Mr. Clark confirmed the neck injuries when he visited his son in prison after his arraignment for murder on March 2, 2000. (N.T. 635).

The court denied the Mr. Gonzales's motion to suppress and credited the testimony of Detectives Gross and McGuffin that Mr. Gonzales was not beaten or threatened prior to giving a statement. Detectives Gross and McGuffin testified in a similar fashion at

8

trial.(N.T. 934-1018).

Prior to trial Mr. Gonzales provided counsel with the names of numerous character witnesses who were prepared to testify to Mr. Gonzales's excellent reputation in the community for being a peaceful and law abiding citizen. For some unfathomable reason, counsel never called these witnesses notwithstanding the paucity of evidence against Mr. Gonzales. Likewise, trial counsel was provided the name of alibi witnesses prior to trial who would have provided evidence directing refuting the content of the so-called confession. As with the character witnesses, counsel never called these alibi witnesses.

## SUMMARY OF THE ARGUMENT

Given the overwhelming corroborated evidence that Mr. Gonzales gave a statement to Homicide detectives only after being physically abused by them, the lower court erred in not granting Mr. Gonzales's motion to suppress the confession. This corroboration came in the form of testimony from an attorney who saw Mr. Gonzales immediately after the interrogation and who described strangulation-like marks encircling Mr. Gonzales's neck. The attorney corroborated the testimony of Mr. Gonzales that he had given a false confession only after being beaten and choked by the interrogating detectives.

Mr. Gonzales was denied a fair trial with the introduction of an anonymous telephone call connecting him to the murder. The direct admission of this evidence, which was objected to and sustained by the lower court, was later introduced indirectly under the guise of course-of-conduct on the part of the police. Specifically, a detective testified that in response to the anonymous phone call, he checked his criminal activity sheets, contacted the Homicide Unit, ascertained that Mr. Gonzales was in custody and made arrangements to have Mr. Gonzales transported to the Homicide Unit. This testimony telegraphed the substance of the anonymous phone call to the jury. This indirect hearsay was not objected to by trial counsel which constituted ineffective assistance of counsel.

Trial counsel was ineffective in not objecting to the admission of evidence connecting Mr. Gonzales to an unrelated retail theft. This evidence served only to besmirch Mr. Gonzales's character in the eyes of the jury and establish his criminal propensity.

Finally, trial counsel was ineffective in not calling alibi witnesses and character witnesses who would have testified to

Mr, Gonzales good reputation for peacefulness even though their names had been supplied to counsel prior to trial.

## ARGUMENT

### A. THE LOWER COURT ERRED IN NOT SUPPRESSING THE ALLEGED CONFESSION GIVEN BY MR. GONZALES.

The Fifth and the Fourteenth Amendments to the United States Constitution require that any confession admitted against a defendant at trial must have been voluntarily given. Schneckloth v. Bustamonte, 412 U.S. 218 (1973). Voluntariness is also required under Article I Section 9 of the Pennsylvania Constitution. See Commonwealth v. Perry, 379 A2d 545 (Pa. 1977). The test for voluntariness is whether the confession is "the product of an essentially free and unconstrained choice by its maker." Schneckloth v. Bustamonte, 412 U.S. at 225-26. If the will of the accused has been overborne and his capacity for self-determination critically impaired, the use of the accused's confession offends due process and abridges the right to remain silent. Rogers v. Richmond, 365 U.S. 534 (1961). The Commonwealth bears the burden of proving by a preponderance of the evidence that the confession has been voluntarily give. Commonwealth v. Goodwin, 333 A2d 892 (Pa. 1975).

To determine the voluntariness of a confession, the court must consider the effect that the totality of the circumstances had upon the defendant. Factors that a court will consider in this determination include: the youth of the accused; lack of education or low intelligence; the issuance of Miranda warnings; the length of the detention; the repeated and prolonged nature of the interview; and the use of physical punishment. Schneckloth v. Bustamonte, 412 U.S. at 226.

An interrogation accompanied by physical violence renders a confession involuntary. Brown v. Mississippi, 297 U.S. 278 (1936). To be valid, a confession must be given free of any physical coercion which might interfere with the accused's will to resist. Commonwealth v. Wright, 376 A2d 988 (Pa. 1977). For

12

example, striking the accused on the back of the head with a
blackjack will render a confession involuntary. Id.

   In the instant case, Mr. Gonzales testified at the motion to
suppress hearing that he repeatedly told two homicide detectives,
William Gross and Lawrence McGuffin, that he did not want to
answer any questions and that he wanted a lawyer present if he
was to be interrogated. (N.T. 687-90). After Mr. Gonzales
repeatedly requested counsel, he was struck twice in the face by
Detective Gross and fell to the floor. (N.T. 691-92). While
curled up on the floor, Mr. Gonzales was choked by Detective
Gross and eventually gave a false confession in order to avoid
continued abuse. (N.T. 692).

   Mr. Gonzales's testimony was corroborated by two sources,
his stepfather, Kevin Clark and Steven Serota, Esquire, who went
to the homicide division on the morning of March 2, 2000 to meet
with Mr. Gonzales in response to a telephone call he had received
earlier that morning from Mr. Clark. Mr. Serota testified that
when he saw Mr. Gonzales at approximately 11:20 a.m. on March 2,
2000 he observed a 3/8" injury encircling Mr. Gonzales's entire
neck which extended from hair line to hair line. (N.T. 662).
Serota described the injury as "very red" with the "skin rubbed
off." (N.T. 662). Mr. Gonzales told Mr. Serota that he gave a
statement only after having been beaten and choked by the police.
(N.T. 662). Indeed, Mr. Serota was initially refused entry to see
his client and only succeeded in meeting with him after
threatening to bring the stonewalling to the attention of the
motion-to-suppress court. (N.T. 656). Mr. Clark confirmed the
neck injuries when he visited his son in prison after his
arraignment for murder on March 2, 2000. (N.T. 635).

   The denial of the motion to suppress by the Court was
manifestly wrong. First, this was not a situation where it was
just the word of the accused against the interrogating officer.

13

Mr. Gonzales presented corroborative evidence of the physical abuse he sustained at the hands and fists of the interrogating officers through the testimony of an attorney who described injuries consistent with strangulation-marks that went beyond a mere rash to the actual removal of skin.

Next, Mr. Gonzales had asserted his constitutional rights earlier at the 35th police precinct when police attempted to question him about the retail theft matter.(N.T. 521). Although police may be permitted to interrogate an accused about a different crime after he has invoked his Miranda rights in an unrelated case, it defies logic for a defendant to invoke his right to silence in a retail theft case but then confess to a murder. Indeed, if the Commonwealth's theory that Mr. Gonzales committed retail theft to get caught so that he could unburden himself of guilt in the murder case, Mr. Gonzales undoubtedly would have confessed to Detective Mock at the 35th police district.

Thus, both the force of logic and the physical evidence presented by the defense at the motion to suppress hearing compels the conclusion that the confession allegedly given by Mr. Gonzales was involuntary and should have been suppressed. Its erroneous admission denied Mr. Gonzales a fair trial since it was the only evidence connecting him to the shooting of Vincent Green. The Court should grant Mr. Gonzales a new trial.

**B. MR. GONZALES WAS DENIED A FAIR TRIAL WITH THE INTRODUCTION OF AN ANONYMOUS TELEPHONE CALL CONNECTING HIM TO THE HOMICIDE AND WITH TRIAL COUNSEL'S FAILURE TO OBJECT TO THE INDIRECT ADMISSION OF THIS HEARSAY.**

After Mr. Gonzales was arrested for the retail theft, he was taken to the 35th police precinct for processing. (N.T. 892). During Mr. Gonzales's stay in a holding cell at the police precinct, Detective Gregory Holman testified that he received an

14

anonymous phone call from a male who identified Mr. Gonzales by
name. (N.T. 927). The Commonwealth's next question was ". . . did
they [sic] make a connection between Gabriel Gonzalez and the
pizza man shooting?" (N.T. 927). An objection to this question
was sustained. (N.T. 927).

The Commonwealth then called Detective Edward Davis to the
stand who testified that he took a second phone call from the
anonymous caller, reviewed his summary sheets, contacted the
Homicide Unit of the Philadelphia Police Department and arranged
for Mr. Gonzales to be transported to the Homicide Unit for
processing. (N.T. 931-33). This testimony, under the guise of
explaining a course-of-conduct on the part of Detective Davis,
denied Mr. Gonzales a fair trial because the Commonwealth
succeeded in doing indirectly what it couldn't do directly:
connecting Mr. Gonzales to the shooting death of Mr. Green
through the actions of Detective Davis taken in response to the
phone call of an anonymous caller.

This Court has dealt on other occasions with fact patterns
similar to that presented in the case at bar where the
Commonwealth, through testimony ostensibly describing the conduct
of the police, indirectly appraises the jury of the hearsay which
prompted that conduct. For example, in Commonwealth v. Thomas,
578 A2d 422 (Pa. Super 1990), the court reversed the defendant's
conviction because the testimony of the police officer relating
the actions he took in response to information received was
tantamount to telegraphing the content of that hearsay to the
jury. Id. at 427. The testimony of the police officer in Thomas
was in response to the question "And, as a result of the
conversation with [the identified informant] what was your next
action?" Id. at 426. "Though couched in terms of course of
conduct testimony ostensibly in compliance with the hearsay rule,
the challenged testimony conveyed the impression that [the
informant] identified appellant as the perpetrator and

15

constituted impermissible `oblique narrative.'" <u>Id.</u> at 427. See
also <u>Commonwealth v. Thomas</u>, 539 A2d 829 (Pa. Super 1988);
<u>Commonwealth v. Farris</u>, 380 A2d 486 (Pa. Super 1977).


    In the case at bar, the testimony followed the same pattern.
Q. And as a result of speaking to Officer Holman or were you
present when a phone call came in?
A. Yes, I was.
Q. And did you then have--did you talk to the person of the
phone?
A. Yes, I did.
Q. Could you tell whether it was a man or a woman on the phone?
A. It was a male voice.
Q. And did the person identify themselves by name?
A. No, they did not.
Q: Based on what that caller told you, what did you do?
A. <u>Based on my conversation with the person on the phone, I
looked into our summary sheets and then I contacted the Homicide
Unit.</u>
Q. Okay. And when you say the summary sheets, what is that?
A. All the jobs that are investigated by Northwest Detectives are
brought in to the detective division and they're given a control
number and then they're tallied on a sheet, and there's a brief
two or three lines summary of what that job-of what curtailed in
that incident. [sic].

        ....
Q. After you called Homicide, . . . what, if anything, did you
do?
A. I went down to the 35th District cell room which is directly
below our headquarter, and I confirmed that there was a male in
custody by the name of Gabriel Gonzales.
Q. And after you confirmed that the male was in custody, what did
you do?
A. <u>I did--I then got a wagon crew that was assigned to the 35th
District to transport prisoners back and forth, and I instructed</u>

16

them that Mr. Gonzales was to be transported down to the Homicide
Unit.
(N.T. 931-33) (emphasis supplied).

     The repeated references by Detective Davis to the Homicide
Unit and transporting Mr. Gonzales to the Homicide Unit after
confirming that he was in custody--all in response to the
anonymous phone call--plainly conveyed to the jury that the
anonymous caller implicated Mr. Gonzales in the shooting death of
Mr. Green. That Detective Davis consulted his summary sheets and
then called the Homicide Unit only served to bolster the
reliability of the anonymous caller and telegraph the substance
of the phone call. Finally, so as to remove any doubt as to the
jury's ability to see through the transparency of this testimony,
Detective Davis testified after the Commonwealth attempted to
introduce the actual content of the phone call "...make[ing] a
connection between Gabriel Gonzales and the pizza man
shooting[.]", through the testimony of Detective Holman. (N.T.
927).

     Defense counsel objected to the direct hearsay testimony of
Detective Holman but not to the indirect hearsay testimony of
Detective Davis. Counsel's failure to object to the testimony of
Detective Davis constituted ineffective assistance of counsel.

     The standard and scope of review for ineffective assistance
of counsel, is a three pronged test: whether the claim is of
arguable merit; whether counsel's omission or action had no
reasonable basis designed to effectuate the client's interests;
and whether counsel's ineffectiveness undermined the truth
determining process so as to call the reliability of the verdict
into question.  Commonwealth v. Moore, 715 A.2d 448 (Pa. Super.
1998).

     The claim is of arguable merit since the same issue was

17

addressed in Thomas and resulted in the reversal of the conviction in that case. No plausible tactical basis could exist for counsel not objecting to this testimony given that he had objected to the direct hearsay earlier. Finally, the evidence against Mr. Gonzales was not overwhelming. There were no finger prints, eyewitnesses or other evidence, with the exception of the contested statement, to connect Mr. Gonzales to the crime.

With respect to the so-called confession, Mr. Gonzales introduced evidence to corroborate the claim that the confession had been extracted from him through physical abuse. This corroboration came through the testimony of an attorney who observed marks consistent with strangulation marks around the neck of Mr. Gonzales minutes after the confession was given and a photograph marked as D-5 taken either at the Police Administration Building or the prison depicting the marks. (N.T. 662; 1142-1145). The substance of the anonymous phone call was crucial to the Commonwealth's case since it constituted corroborative evidence of the identity of Mr. Gonzales as the shooter of the pizza delivery man. Under these circumstance, Mr. Gonzales was prejudiced by the ineffectiveness of counsel and should be granted a new trial.

Finally, the admission of this hearsay offended Mr. Gonzales's  fundamental constitutional right to confront his accuser, the anonymous caller. Dutton v. Evans, 400 U.S. 74 (1970) (Sixth Amendment). Commonwealth v. Smith, 568 A2d. 600 (Pa. 1989) (Article 1, Section 9 of the Pennsylvania Constitution). The right of confrontation assures that the declarant can be placed under oath and his testimony subjected to cross examination so that the jury can have the opportunity to examine his demeanor. In the instant case, the identity of the informant was unknown and the basis of his knowledge untested and he was not placed under oath. There was no conceivable exception to the hearsay rule under which this testimony was admissible.

18

Accordingly, Mr. Gonzales's right of confrontation under both the United States and Pennsylvania Constitutions was violated.

## C. TRIAL COUNSEL WAS INEFFECTIVE IN FAILING TO OBJECT TO TESTIMONY CONNECTING MR. GONZALES TO AN UNRELATED RETAIL THEFT

The Commonwealth introduced evidence that Mr. Gonzales was involved in a retail theft on March 1, 2000 which was entirely unrelated to the shooting death of the pizza delivery man the night before. Police Officer Christopher Sarver testified that he was flagged down by an employee of Modell's Sporting Good Store in the Olney Shopping Center. (N.T. 888). Based on information received, Officer Sarver arrested Mr. Gonzales for retail theft. (N.T. 892). Judge Savitt, recognizing the prejudicial nature of this evidence, invited counsel to object to its admission at a prior in-camera hearing. (N.T. 812-15). No objection was forthcoming. Mr. Gonzales's involvement in an unrelated retail theft was again brought up later in the trial through the testimony of Shamiddin Jabar, a friend of Mr. Gonzales who was permitted to testify over objection that the mother of Mr. Gonzales told Mr. Jabar that Mr. Gonzales had stolen some sneakers. (N.T. 1096-97). The court allowed this testimony based on the Commonwealth's representation that it was not being offered for the truth of the matter. (N.T. 1096-97).

Trial counsel was ineffective in failing to object to the introduction of this evidence. The Supreme Court of Pennsylvania has observed that the admission of a defendant's unrelated prior criminal conduct is probably only equaled by a confession in its prejudicial impact upon a jury. Commonwealth v. Spruill, 391 A2d 1048, 1050 (Pa. 1978). Mr. Gonzales's alleged involvement in the unrelated retail theft did not fit within one of the exceptions to the general prohibition against admission of other crimes evidence designed to show absence of mistake, motive, intent, identity, common plan scheme or design. Commonwealth v. Bond, 396

19

A2d 414 (Pa. Super 1978). Its admission therefore was erroneous.

Trial counsel was ineffective in failing to object to the admission of the unrelated retail theft. As was the case in the above described ineffective assistance of counsel analysis, the claim is of arguable merit since the courts recognize the prejudice inherent in the introduction of other crimes evidence. Indeed, Judge Savitt alerted counsel to the inherent inappropriateness of this evidence at a sidebar conference. (N.T. 812-15). No plausible tactical basis could exist for counsel not objecting to this testimony given that the evidence could only be construed by the jury as evidence of Mr. Gonzales's dishonesty and criminal propensity. Finally, the evidence against Mr. Gonzales was not overwhelming. There were no finger prints, eyewitnesses or other evidence, with the exception of the contested statement, the questionable nature of which has been analyzed, underline{supra}, to connect Mr. Gonzales to the crime.

## D. TRIAL COUNSEL WAS INEFFECTIVE IN NOT CALLING CHARACTER WITNESSES AND AN ALIBI WITNESS ON BEHALF OF MR. GONZALES EVEN THOUGH THEIR NAMES HAD BEEN SUPPLIED TO COUNSEL BEFORE TRIAL

Before trial started, Mr. Gonzales and his representatives gave a list to trial counsel identifying numerous character witness who would have testified to the excellent reputation for peacefulness Mr. Gonzales enjoyed in the community at the time the incident occurred, February 29, 2000.[2] Mr. Gonzales also supplied counsel with the names of alibi witnesses who were prepared to testify about Mr. Gonzales's whereabouts on 11:40 p.m., February 29, 2000, when the shooting took place.[3]

---

[2]These witnesses include Vernon Wynder, Ashley Northeran, Charlotte Greenwood, Thomas Brady, Sheila Sayles, Selena Johnson, Delores Samoni, Joyce Johnson, Edward Hunley, Alexis Clark, and Sally Hamilton.

[3]These witnesses include Kevin Clark and Mr. Gonzales's fiancee.

Inexplicably, counsel did not call these character or alibi witnesses even though it might have turned the tide of the case in favor of Mr. Gonzales and worked and acquittal on his behalf. Under the facts of this case, trial counsel's failure amounted to ineffective assistance of counsel.

In determining whether counsel was ineffective in failing to interview or present a defense witness, a defendant must establish that: (1) the witness existed; (2) the witness was available; (3) counsel was informed of the existence of the witness or counsel should have otherwise known of him; (4) the witness was prepared to cooperate and testify for the defendant at trial; and (5) the absence of the testimony prejudiced the defendant so as to deny him a fair trial. <u>Commonwealth v. Petras</u>, 534 A2d 483 (Pa. Super 1987).

In the instant case, Mr. Gonzales is prepared to establish the first four prongs of this test and has attached affidavits, collectively Exhibit B, from witnesses who were prepared to testify at trial either as character or alibi witnesses and whose names were supplied to trial counsel by Mr. Clark. With respect to the fifth criterium, trial counsel's failure to call alibi and character witnesses on behalf of Mr. Gonzales denied him a fair trial. In <u>Commonwealth v. Gillespie</u>, 620 A2d 1143 (Pa. Super 1993), the court observed that good character evidence is of upmost importance in cases where the evidence against the defendant is not overwhelming. <u>Id.</u> at 1145. In these types of situations, "Evidence of good reputation is, therefor, substantive, not simply `make weight, thrown in to assist in the production of the result.. . Evidence of good character ...may of itself, by the creation of a reasonable doubt, produce an acquittal.'" <u>Id.</u> at 1145 (citations omitted). In <u>Commonwealth v. Beckham</u>, 525 A2d 782 (Pa. Super 1987), the court reversed the judgement of sentence of a defendant whose trial counsel failed to subpoena and present the testimony of an alibi witness.

21

Instantly, as described above, the evidence against Mr. Gonzales was not overwhelming. There were no finger prints, eyewitnesses or other evidence, with the exception of the contested statement, to connect Mr. Gonzales to the crime. With respect to the so-called confession, Mr. Gonzales introduced evidence to corroborate the claim that the confession had been extracted from him through physical abuse. Under these circumstances, Mr. Gonzales was prejudiced by the ineffectiveness of counsel in not calling character and alibi witnesses and should be granted a new trial or in the alternative, a remand to the court of common pleas to establish a record of counsel's ineffectiveness.

Finally, the above-described claims of ineffective assistance of counsel are also cognizable under the federal constitution. Under federal law, a claim of ineffective assistance of counsel is reviewed under the two-pronged test announced in <u>Strickland v. Washington</u>, 466 U.S. 668 (1984). Under that standard, the defendant must first show that his counsel's performance was so deficient that it fell below an objective standard of reasonableness under prevailing professional norms. <u>Id</u>. at 688. "This requires showing that counsel made errors so serious that counsel was not functioning as the `counsel' guaranteed the defendant by the Sixth Amendment." <u>Id</u>. at 687.

If a defendant succeeds in establishing that his or her counsel's performance was deficient, the defendant must then show that the deficient performance prejudiced the defense. <u>Buehl v. Vaughn</u>, 166 F.3d 163 (3d Cir. 1999). "This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." <u>Strickland</u>, 466 U.S. at 687. To satisfy this test, it must be shown that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have

22

been different.  A reasonable probability is a probability
sufficient to undermine confidence in the outcome."  Id. at 694,
104 S.Ct. 2052.  Both prongs of the Strickland test must be met
before the defendant may obtain relief.  United States v. Nino,
878 F.2d 101, 103-104 (3d Cir. 1989).  Mr. Gonzales adopts the
previously employed analysis in connection with his ineffective
assistance of counsel claim under the federal constitution.

## CONCLUSION

Mr. Gonzales requests that this Court grant him a new trial based on the erroneous introduction of his confession and the erroneous admission of his arrest for retail theft and the admission of the evidence surrounding the actions of the detectives in response to the anonymous phone call implicating Mr. Gonzales in the murder. In the alternative, Mr. Gonzales requests that the Court remand the matter to the court of common pleas for an evidentiary hearing on the issue of whether trial counsel was ineffective in failing to call character and alibi witnesses.

Respectfully submitted

MARK S. GREENBERG, ESQUIRE
Attorney for APPELLANT
GABRIEL GONZALES

24



**COURT OF COMMON PLEAS**
**TRIAL DIVISION**
**CRIMINAL APPEALS / POST TRIAL UNIT**
**ROOM 206 CRIMINAL JUSTICE CENTER**
**1301 FILBERT STREET**
**PHILADELPHIA, PA. 19107**

**683-7522, 7523**

**FREDERICA MASSIAH-JACKSON**
*President Judge*
*Trial Division*

**JOHN W. HERRON**
*Administrative Judge*
*Trial Division*

**D. WEBSTER KEOGH**
*Supervising Judge*
*Criminal Division*

**SUSAN CARMODY**
*Supervisor*

September 6, 2001

David A. Szewczak, Prothonotary
Superior Court of Pennsylvania
530 Walnut Street, Suite 315
Philadelphia, Pa. 19106

**Re:** Gabriel Gonzales Appl.# 2019 EDA 2001 CP 0003-0352 1/1

Mr. Szewczak,

On July 2, 2001, Mark S. Greenberg, Esq. filed an appeal for the above case in our Court. This is an appeal from the Judgement of Sentence on February 21, 2001, and the Denial of Post Sentence Motions on June 7, 2001 by Judge David N. Savitt. Since Judge Savitt does not issue opinions on this type of case, this file is forwarded to Superior Court without an opinion. Should you require additional information, please feel free to contact me.

Respectfully yours,

*Susan A. Carmody*

Susan A. Carmody

cc: Catherine Marshall, Chief, Appeals Unit, District Attorney's Office
   Mark S. Greenberg, Esq., 3100 Lewis Tower, 225 S. 15th Street, Phila., PA 19102
   Appeal File
   Docket pg. 674 (7/01)
   Letter File

Exhibit A

## AFFIDAVIT OF KEVIN CLARK

I am the step-father of Gabriel Gonzales. I would have testified both as a character witness and as an alibi witness. I was prepared to testify that Gabriel had an excellent reputation for being a peaceful citizen. I told Mr. El-Shabazz I would have testified and also supplied him with the names of other people who would have testified to Gabe's good character. These people include those whose affidavits are attached to this brief. I also would have testified that Gabe was with me on February 29, 2000 from between 8:45 a.m. until 10:00 p.m. and from 10:30 p.m. until midnight. I provided this information to Mr. El-Shabazz and also provided him with the name of another alibi witness, Gabe's fiancée, Delphine McAliley.

KEVIN CLARK
4438 N. Franklin Street
Philadelphia, PA 19140

SWORN TO AND SUBSCRIBED

BEFORE ME THIS 21 DAY

OF    November, 2001.

NOTARY PUBLIC

NOTARIAL SEAL
RENE M. WILSON, Notary Public
City of Philadelphia, Phila. County
My Commission Expires Jan. 14, 2002

Exhibit B

## AFFIDAVIT

I, Stephanie D. Matthews, does herein declare and aver depose and say, having been duly sworn and affirmed, in accordance to law that all of the aforegoing is true and correct. I am of legal age and soundness of mind, not under duress or coercion. In your own words please state as a character witness what you know regarding Gabriel Gonzalez's conduct in our society. What is your date of birth, address and telephone number for the record? My date of birth is 01/01/63. My address is 5908 North Lawrence Street. My telephone number is 215-549-2196.

Gabriel is a very well respectable young man.  He was an excellent mentor for my 17 year old son who is 19 and the younger children.  I've watch Gabriel go out of his way to give assistance to this older woman with her husband. (This woman lives across the street from me).  The young children just love Gabriel.  You can tell that this young man comes from a very respectable household.  I've never seen Gabriel hang out on the corners. During the times I would see Gabriel, he would be with his father or on his porch.  I'd watch how Gabriel would play with the children on the block. If the children had gotten out of hand or disrespectful to any of the other neighbors, Gabriel would take the young man over to whomever, and have them apologize to him/her. Gabriel was like a mentor for my son who was 17 years old at that time and the younger children on the block.  You can tell that he comes from a family of unity, love and well mannered.

Again, I say that there's has to be some type of mistaken identity.  His mother has an excellent job and his father has his own businesses.  So he was not for want.  You talking about a silver spoon, this family had it.  Actually, you have to see the family to really believe it.  To be quite honest, I couldn't believe how neighborly they were to me.  This is the nicest family on Lawrence Street.  They're beautiful.

/s/

Signature

Exhibit R (1)

## AFFIDAVIT

Pursuant to the penalties under 18 Pa.C.S. § 4904 (relating to unsworn falsifications to authorities), I verify that had I been called to testify at the trial of Gabriel Gonzales, I would have given testimony as to his good character.

I also verify that I was never contacted by an attorney toward the interest of being called to testify in the capacity of a character witness at a trial for Gabriel Gonzalez.

In suit with the above verifications, I verify that I am willing to testify as to my statements herein, before a court of law.

Address of Witness:

5908 North Lawrence St
Philadelphia, PA 19120

Date of signing of affidavit:
11/19/          , 2001

NOTARIAL SEAL
LAVETTE CARTHON, NOTARY PUBLIC
HORSHAM TWP, MONTGOMERY COUNTY
MY COMMISSION EXPIRES SEPT. 6, 2004

Exhibit B (2)

## AFFIDAVIT

I, *Dolores Samson*, does herein declare and aver depose and say, having been duly sworn and affirmed, in accordance to law that all of the aforegoing is true and correct. I am of legal age and soundness of mind, not under duress or coercion. In your own words please/as a character witness what you know regarding Gabriel Gonzalez's conduct in our society. What is your date of birth, address and telephone number for the record? My date of birth is, 3/26/25 . My address is, 5920 N. Lawrence St . My telephone number is, (215) 424/8788 .

I knew Gabe a few years when they moved on Lawrence St. I found him to be very nice to the younger children in teaching them to play football. He was always polite to me, asking if he could carry my packages for me because I am an older woman. He also never used bad language in front of me. He also always helped older people on the street.

/s/ *Dolores Samson*
**Signature**

Exhibit B(3)

### AFFIDAVIT

Pursuant to the penalties under 18 Pa.C.S. § 4904 (relating to unsworn falsifications to authorities), I verify that had I been called to testify at the trial of Gabriel Gonzales, I would have given testimony as to his good character.

I also verify that I was never contacted by an attorney toward the interest of being called to testify in the capacity of a character witness at a trial for Gabriel Gonzalez.

In suit with the above verifications, I verify that I am willing to testify as to my statements herein, before a court of law.

*Dolores M. Sanou*

Address of Witness:

*5920 N. Lawrence St.*

Date of signing of affidavit:

*11/15/2001* , 2001

NOTARIAL SEAL
LAVETTE CARTHON, NOTARY PUBLIC
HORSHAM TWP., MONTGOMERY COUNTY
MY COMMISSION EXPIRES SEPT. 6, 2004

*Lavette Carthon*

Exhibit B (4)

MS Charlotte

## AFFIDAVIT

I, Charlotte Greenwood, does herein declare and aver depose and say, having been duly sworn and affirmed, in accordance to law that all of the aforegoing is true and correct. I am of legal age and soundness of mind, not under duress or coercion. In your own words please/as state a character witness what you know regarding Gabriel Gonzalez's conduct in our society. What is your date of birth, address and telephone number for the record? My date of birth is, 1/16/33 . My address is, 5813 Lawrence St, Pella Pa . My telephone number is, 927-3156 .

I have lived in my home 4-5 years, a good family neighborhood. Gabe and his family, moved in a few years ago, I have never known Gabe to be anything but a quiet and very helpfull young man.

Mrs Charlotte Greenwood

P.S My husband was terminal illness and fell many times, I couldn't get him up myself and had to call on Gabe to come pick him up. Gabe did it gladly, with compassion

/s/ Charlotte Greenwood

**Signature**

Exhibit B (5)

<u>A F F I D A V I T</u>

     Pursuant to the penalties under 18 Pa.C.S. § 4904 (re-
lating to unsworn falsifications to authorities), I verify that
had I been called to testify at the trial of Gabriel Gonzales,
I would have given testimony as to his good character.

     I also verify that I was never contacted by an attorney
toward the interest of being called to testify in the capacity
of a character witness at a trial for Gabriel Gonzalez.

     In suit with the above verifications, I verify that I am
willing to testify as to my statements herein, before a court
of law.

*Carlotte Granwood*

Address of Witness:

*5913 Lawrence St.*
*Phila. Pa.*
*19120*

*Lavette Carthine*

Date of signing of affidavit:

*11/9/01* , 2001

NOTARIAL SEAL
LAVETTE CARTHON, NOTARY PUBLIC
HORSHAM TWP., MONTGOMERY COUNTY
MY COMMISSION EXPIRES SEPT. 6, 2004

*During Gabe first trial, I was able to
testify - was not called - Now I have heart
failure and mostly house bound.*

*C. G*

*Exhibit B 61*

## AFFIDAVIT

I, _Joyce Johnson_ , does herein declare and aver depose and say, having been duly sworn and affirmed, in accordance to law that all of the aforegoing is true and correct. I am of legal age and soundness of mind, not under duress or coercion. In your own words please *state* ~~has~~ a character witness what you know regarding Gabriel Gonzalez's conduct in our society. What is your date of birth, address and telephone number for the record? My date of birth is, _10/8/36_ . My address is, _6437 N. 15th St._ . My telephone number is, _215-924-3257_ .

_Gabriel is the father of my great grand. He has always been a kind and well respected young man to me and my family. I believe him to be a fun loving, caring young man. He sometime attended church with me and went on different functions with the family. He was well liked in my neighborhood and always respected his elders. And anyone he was in his company. I can truly say he ~~was~~ is a fine young man and was a asset to this ~~family~~ family and neighborhood_

/s/ _Joyce Johnson_
**Signature**

_Exhibit B (7)_

## AFFIDAVIT

Pursuant to the penalties under 18 Pa.C.S. § 4904 (relating to unsworn falsifications to authorities), I verify that had I been called to testify at the trial of Gabriel Gonzales, I would have given testimony as to his good character.

I also verify that I was never contacted by an attorney toward the interest of being called to testify in the capacity of a character witness at a trial for Gabriel Gonzalez.

In suit with the above verifications, I verify that I am willing to testify as to my statements herein, before a court of law.

Address of Witness:

6437 N. 15 St

Phila. Pa.

19126

Date of signing of affidavit:

11/19/01 , 2001

NOTARIAL SEAL
LAVETTE CARTHON, NOTARY PUBLIC
HORSHAM TWP, MONTGOMERY COUNTY
MY COMMISSION EXPIRES SEPT. 6, 2004

Exhibit B (8)

## AFFIDAVIT

I, _Sheila R. Snyder_, does herein declare and aver depose and say, having been duly sworn and affirmed, in accordance to law that all of the aforegoing is true and correct. I am of legal age and soundness of mind, not under duress or coercion. In your own words please ~~has~~ state a character witness what you know regarding Gabriel Gonzalez's conduct in our society. What is your date of birth, address and telephone number for the record? My date of birth is, _11 9 62_. My address is, _427 West Wellens Street._. My telephone number is, _215 (455 0968)_.

Having known Gabriel Since Birth, I can start by saying his conduct in society is nothing but productive Growing up to Be a very responsible young Man. Old enough to get a Job Gabriel had a Job, old enough to drive a car he recieved his drivers license. Having a child at a age when most guys Just wouldn't accept Responsibities.

Gabriel has by supporting and help Raising his daughter. He often talked about going to college. Because of his Obligation to his daughter he put that on hold. Coming from a Religious Family - going to church was a Factor in his life.

My son Jevan look up to Gabriel with his positive influence, Jevan is a B average in College. Gabriel being the oldest of his Sibling, it would be nothing for him to take them to games, shopping ext. When passing by (My house) it would nothing for him to stop and ask if I need anything, if I was alright. Gabriel mannerism is always something I would be proud of when I see him.

Gabriel contact in society is a positive one, a productive one.

/s/ _Sheila R. Snyder_

**Signature**

Exhibit B (a)

## AFFIDAVIT

Pursuant to the penalties under 18 Pa.C.S. § 4904 (relating to unsworn falsifications to authorities), I verify that had I been called to testify at the trial of Gabriel Gonzales, I would have given testimony as to his good character.

I also verify that I was never contacted by an attorney toward the interest of being called to testify in the capacity of a character witness at a trial for Gabriel Gonzalez.

In suit with the above verifications, I verify that I am willing to testify as to my statements herein, before a court of law.

Address of Witness:

6/27 Welkens St.
Phila. PA. 19106

Date of signing of affidavit:

11.20. , 2001

NOTARIAL SEAL
LAVETTE CARTHON, NOTARY PUBLIC
HORSHAM TWP., MONTGOMERY COUNTY
MY COMMISSION EXPIRES SEPT. 6, 2004

Exhibit B(101)

Selena

## AFFIDAVIT

I, Selena Johnson , does herein declare and aver depose and say, having been duly sworn and affirmed, in accordance to law that all of the aforegoing is true and correct. I am of legal age and soundness of mind, not under duress or coercion. In your own words please/has a character witness what you know regarding Gabriel Gonzalez's conduct in our society. What is your date of birth, address and telephone number for the record? My date of birth is, 12/27/80 . My address is, 6437 N. 15th St Phila, PA 19126. My telephone number is, (215) 924-4718 or 924-3257

As Gabriel being my boyfriend as well as the father of our daughter Gabriel is loving and caring and also very smart he tries his best to make others happy and comfortable in his presents Gabriel always had a lot of friends he is loved by everyone. Including his teachers and coaches when he was attending school Gabriel had good grades and was always a star on the foot ball field. As my personal types of knowing and being with each other for 6 years we shared love and fun time with each other facts attending family gatherings and trips with each other and recreational things in general. Gabriel is also a excellent father to our daughter if it was anyone that he would put first in his life it would be our 2 year old Sanni. Gabriel loved and cared for her since the day he saw her being brought into this world. Gabriel has never been a person of harm or cause to harm. Gabriel has saved lives and help people in the neighborhood with any little thing and has always displayed kindness and respect for all young and older people. Gabriel has been a positive role model to his child and younger siblings of his and others. He has always displayed good character where ever he went. Gabriel has always been hard working and loving and caring and sensitive to other peoples needs.

/s/ Selena Johnson /
**Signature**

Exhibit B(ii)

## AFFIDAVIT

Pursuant to the penalties under 18 Pa.C.S. § 4904 (relating to unsworn falsifications to authorities), I verify that had I been called to testify at the trial of Gabriel Gonzales, I would have given testimony as to his good character.

I also verify that I was never contacted by an attorney toward the interest of being called to testify in the capacity of a character witness at a trial for Gabriel Gonzalez.

In suit with the above verifications, I verify that I am willing to testify as to my statements herein, before a court of law.

Address of Witness:

6437 N. 15th Street
Philadelphia PA 19126

Date of signing of affidavit:

11-19-01 , 2001

NOTARIAL SEAL
LAVETTE CARTHON, NOTARY PUBLIC
HORSHAM TWP, MONTGOMERY COUNTY
MY COMMISSION EXPIRES SEPT. 6, 2004

Exhibit B(2)

## AFFIDAVIT

Pursuant to the penalties under 18 Pa.C.S. § 4904 (relating to unsworn falsifications to authorities), I verify that had I been called to testify at the trial of Gabriel Gonzales, I would have given testimony as to his good character.

I also verify that I was never contacted by an attorney toward the interest of being called to testify in the capacity of a character witness at a trial for Gabriel Gonzalez.

In suit with the above verifications, I verify that I am willing to testify as to my statements herein, before a court of law.

*Richetta McAliley*

Address of Witness:

*1536 W Oakdale St*
*Philadelphia, PA 19132*

*Phone : 215 257-8142*

Date of signing of affidavit: *Lavette Carthon*

*November 19*, 2001

NOTARIAL SEAL
LAVETTE CARTHON, NOTARY PUBLIC
HORSHAM TWP., MONTGOMERY COUNTY
MY COMMISSION EXPIRES SEPT. 6, 2004

As long as I've known Gabriel Gonzales, he has never in trouble. he was a great student and a great athlete. He respectful and a kind hearted young man. He avoids trouble when ever it came towards him. He never disrespected anyone, He always had friends but stayed to himself to avoid alot of confusion. Gabriel + was verbal but suppose, he would try to tell people what he would want them.

*K.M.*

Exhibit B(13)

## AFFIDAVIT

Pursuant to the penalties under 18 Pa.C.S. § 4904 (relating to unsworn falsifications to authorities), I verify that had I been called to testify at the trial of Gabriel Gonzales, I would have given testimony as to his good character.

I also verify that I was never contacted by an attorney toward the interest of being called to testify in the capacity of a character witness at a trial for Gabriel Gonzalez.

In suit with the above verifications, I verify that I am willing to testify as to my statements herein, before a court of law.

*[signature]*

Address of Witness:

5200 N Carlisle St.
Phila, Pa. 19141

Date of signing of affidavit:

11-19-01 , 2001

Exhibit B(4)

## AFFIDAVIT

**Tom**

I, _Thomas Brady_, does herein declare and aver depose and say, having been duly sworn and affirmed, in accordance to law that all of the aforegoing is true and correct. I am of legal age and soundness of mind, not under duress or coercion. In your own words please/has _state_ a character witness what you know regarding Gabriel Gonzalez's conduct in our society. What is your date of birth, address and telephone number for the record? My date of birth is, _6/04/65_. My address is, _5919 N. Lawrence St. Phila PA_. My telephone number is, _215 424 3015_.

Gabe Gonzalez in my opinion has always been a fine young man and a quiet and respectful youth. Gabe was a fine athlete and a respectful young man in a neighborhood where you are likely to find more and more peop with belligerant attitude problems, Ga. never displayed or acted out of line I feel remorse about the fact that I even am writing this letter. Gabe was quiet and insightful and always willing to lend a hand. He was a role model for the younger kids in the neighborhood. I hope with God's grace, and Gabe, will be able to fulfill his ultimate potential.

/s/ Thomas C. Brady
**Signature**

Exhibit B 151

## AFFIDAVIT

Pursuant to the penalties under 18 Pa.C.S. § 4904 (relating to unsworn falsifications to authorities), I verify that had I been called to testify at the trial of Gabriel Gonzales, I would have given testimony as to his good character.

I also verify that I was never contacted by an attorney toward the interest of being called to testify in the capacity of a character witness at a trial for Gabriel Gonzalez.

In suit with the above verifications, I verify that I am willing to testify as to my statements herein, before a court of law.

*LaVette King*

Address of Witness:

*LaVette King*
*106 W Johnson st.*
*Phila. PA. 19144*

Date of signing of affidavit:

*11 - 19 -*          , 2001

Exhibit B (161)

## AFFIDAVIT

Pursuant to the penalties under 18 Pa.C.S. § 4904 (relating to unsworn falsifications to authorities), I verify that had I been called to testify at the trial of Gabriel Gonzales, I would have given testimony as to his good character.

I also verify that I was never contacted by an attorney toward the interest of being called to testify in the capacity of a character witness at a trial for Gabriel Gonzalez.

In suit with the above verifications, I verify that I am willing to testify as to my statements herein, before a court of law.

*Christian Clark*

Address of Witness:

5914 W Lawrence

Philadelphia

Penn.

19120

Date of signing of affidavit:

November 19, 2001

```
NOTARIAL SEAL
LAVETTE CARTHON, NOTARY PUBLIC
HORSHAM TWP., MONTGOMERY COUNTY
MY COMMISSION EXPIRES SEPT. 6, 2004
```

*Lavette Carthon*

Exhibit B (1)

5929 N. Lawrence St.
Philadelphia, PA 19120
September 27, 2001

Dear Your Honor:

I am writing this letter on behalf of Gabriel Gonzalez. As a longtime neighbor of Gabriel and his family (I have lived on the block for nine years), I have watched Gabriel grow up into a fine young man. Gabriel and his younger siblings are all good kids. Gabriel and his family have always been good neighbors and it has always been obvious to me that they all are good people. Gabriel's grandmother even lived next door to his family home. She has since passed away. Gabriel could be regularly seen playing street football with his younger siblings and most of the kids on the block. He would quarterback for both teams and make sure the smallest child got to play and not get hurt.

We all live on a small one block, one way street and all the kids grew up playing together, including my four teenagers. Gabriel was never in any trouble on our block and in fact was always polite and helpful.

On April 4, 1997, I was violently attacked in the living room of my home. Gabriel and his father Kevin, both ran into my home and saved my life while I was being strangled. As soon as they ran in, the man ran out, and into the police. Although I have never asked, I believe they shouted for someone to call 911 as they were coming to my rescue. Without Gabriel's and his fathers help I can firmly say that I would not be alive today. The man who assaulted me was later convicted, and is now on parole.

While saddened by the death Gabriel is accused of, I do not believe Gabriel had anything to do with this horrible crime. I pray the court dismisses the charges against Gabriel, return him to his family, and search for the truth.

Please feel free to contact me at 215-548-2162 if I can be of further assistance. I am willing to testify in person on Gabe's behalf if the court so desires.

GOD Bless,

Tonya Stief

Exhibit B 18

## AFFIDAVIT

Pursuant to the penalties under 18 Pa.C.S. § 4904 (relating to unsworn falsifications to authorities), I verify that had I been called to testify at the trial of Gabriel Gonzales, I would have given testimony as to his good character.

I also verify that I was never contacted by an attorney toward the interest of being called to testify in the capacity of a character witness at a trial for Gabriel Gonzalez.

In suit with the above verifications, I verify that I am willing to testify as to my statements herein, before a court of law.

*Gloria Slocum*

Address of Witness:

GLORIA SLOCUM
5416 LAWRENCE STREET
Phila Pa 19120

Date of signing of affidavit:

NOV 16th, 2001

```
NOTARIAL SEAL
LAVETTE CARTHON, NOTARY PUBLIC
HORSHAM TWP., MONTGOMERY COUNTY
MY COMMISSION EXPIRES SEPT. 6, 2004
```

*LaVette Carthon*

Exhibit B(19)

## AFFIDAVIT

Pursuant to the penalties under 18 Pa.C.S. § 4904 (relating to unsworn falsifications to authorities), I verify that had I been called to testify at the trial of Gabriel Gonzales, I would have given testimony as to his good character.

I also verify that I was never contacted by an attorney toward the interest of being called to testify in the capacity of a character witness at a trial for Gabriel Gonzalez.

In suit with the above verifications, I verify that I am willing to testify as to my statements herein, before a court of law.

Address of Witness:

5914 N. Lawrence St.
Phila. PA. 19120

Date of signing of affidavit:

November. 19, 2001

NOTARIAL SEAL
LAVETTE CARTHON, NOTARY PUBLIC
HORSHAM TWP., MONTGOMERY COUNTY
MY COMMISSION EXPIRES SEPT. 6, 2004

Exhibit B (20)

**STEPHEN ROBERT LaCHEEN & ASSOCIATES**
BY: MARK S. GREENBERG, ESQUIRE
Identification No. 35638
3100 Lewis Tower Building
15th and Locust Streets
Philadelphia, Pennsylvania 19102
(215) 735-5900
(215) 735-4649                          Attorney for Appellant

---

COMMONWEALTH OF PENNSYLVANIA    : :    EASTERN DISTRICT
                                : :    SUPERIOR COURT OF PENNSYLVANIA
                                : :
       v.                       : :
                                : :
GABRIEL GONZALES                : :    NO.2019 EDA 2001


### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing
Brief for Appellant was served upon Catherine Lynn Marshall,
Esquire, Bar #45232, Philadelphia District Attorney's Office,
1421 Arch Street, Philadelphia PA 19102, 215-686-5730 by first
class mail, postage prepaid, on the date below.

_____
MARK S. GREENBERG , ESQUIRE
Attorney for Appellant
GABRIEL GONZALES


DATED: ~~October~~ November 21, 2001

25

EXHIBIT B

J.S26032/02

| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF |
|---|---|---|
| Appellees | : | PENNSYLVANIA |
| | : | |
| vs. | : | |
| | : | |
| GABRIEL GONZALES, | : | |
| Appellant | : | No. 2019 EDA 2001 |

Appeal from the Judgment of Sentence February 21, 2001
In the Court of Common Pleas of Philadelphia County
Criminal, No. 0352, March Term, 2000

BEFORE:  STEVENS, OLSZEWSKI, and KELLY, JJ.

MEMORANDUM:                                          Filed:  August 7, 2002

Appellant, Gabriel Gonzales, appeals from his judgment of sentence entered in the Philadelphia County Court of Common Pleas following his convictions for murder in the second degree,[1] robbery,[2] and possession of an instrument of crime.[3]  We affirm.

The relevant facts and procedural history of this case, as gleaned from the certified record, are as follows.  On the evening of February 29, 2000, Vincent Green was working as a pizza delivery driver in Philadelphia.  At approximately 11:00 p.m. the manager of the pizza shop gave Green some pizzas to deliver.  As Green conversed with Mr. Sulpizio, his manager, Appellant entered Green's unlocked delivery vehicle.  Realizing that the

---

[1] 18 Pa.C.S.A. § 2502(b).

[2] 18 Pa.C.S.A. § 3701(a).

[3] 18 Pa.C.S.A. § 907.

J.S26032/02

interior light might alert someone to his presence, Appellant ripped out the dome light in the vehicle.  When Green entered his delivery vehicle, he sat down and then noticed Appellant in the back seat.  Green then began throwing money at Appellant.  Despite the fact that Green surrendered his money without a fight, Appellant pointed his gun at Green and shot him in the chest at point blank range.  After hearing the gunshot, Mr. Sulpizio glanced outside and noticed a man about 5'8" or 5'9" exit Green's car and flee.  Green stumbled back into the pizza shop and collapsed in front of his manager.  Mr. Sulpizio called 911 and Green was rushed to the hospital. Unfortunately, Green was pronounced dead at the hospital a few hours later. (N.T. Trial, 2/15/01, at 1107-11).

The following day police officers were summoned to a sporting goods store by a security guard.  The security guard informed the officers that a man (Appellant), sitting in a parked automobile, had just stolen a pair of sneakers.  The police approached Appellant and retrieved the sneakers.  The police subsequently arrested Appellant for retail theft.

Early the next morning, while Appellant was still in jail on the retail theft charge, the police received an anonymous phone call, implicating Appellant in the murder of Green.  At approximately 4:45 a.m. that morning, Detective Gross bought Appellant into an interview room at the homicide unit.  Gross told Appellant he wished to speak with him regarding the

- 2 -

J.S26032/02

murder of Green.   Gross read Appellant his **Miranda**[4] warnings.   When Gross finished reading Appellant these warnings, Appellant stated "you might find [my] fingerprints inside the car because [Green] asked me to fix his inside light."   (**Id.**, 2/14/01, at 943).   Gross immediately ceased speaking with Appellant, left the interview room, and retrieved a portable typewriter.   Gross also bought Detective McGuffin into the interview room. Again, Gross read Appellant his **Miranda** warnings, and McGuffin typed them out on the typewriter.   Appellant read each of the warnings and initialed and signed his name.   Gross left McGuffin to complete the interview with Appellant.   After one and one-half hours, Appellant confessed to the shooting.

Appellant stated that on the night in question he had split a six-pack of beer with his friend, "Shiz".   At 11:00 p.m., Shiz left to see his girlfriend and Appellant went home and retrieved his handgun.   Appellant stated that he entered Green's car and hid in the backseat.   When Green entered the car, he saw Appellant lying in the backseat and began throwing money at him. Appellant then shot Green and fled with approximately two hundred dollars. Appellant explained that he fled down an alley towards his house, threw the gun into his backyard, and hid when he saw police looking for him. Appellant indicated that he had gone to the sporting goods store the following day and stole the sneakers because he felt "bad" for what he had

---

[4] **Miranda v. Arizona**, 384 U.S. 486, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

J.S26032/02

done to Green the previous night, and he wanted to get caught. (*Id.* at 1010-16).

At approximately 11:00 a.m. that morning Mr. Serota, an attorney purporting to represent Appellant, arrived at the police station. Gross showed Serota Appellant's signed statement and bought him in to speak privately with Appellant. (*Id.* at 966-70). Later that day, the police executed a search warrant for Appellant's residence. In the basement of the residence, police found the clothes Appellant claimed he was wearing on the night of the murder, and a gun box for a .45 caliber handgun. The police, however, were unable to ascertain the whereabouts of the handgun.

The Commonwealth charged Appellant with murder, robbery and possession of an instrument of crime. Prior to trial, Appellant retained new counsel. Appellant filed a pretrial motion to suppress any statements he had made to the police while in custody. Appellant alleged detectives Gross and McGuffin beat and choked him in the interrogation room, and that is why he confessed. Mr. Serota testified that Appellant told him the two detectives had beaten and choked him until he confessed. The suppression court ruled Appellant's statements to the police were voluntary, and denied Appellant's motion to suppress. (N.T. Suppression Hearing, 2/13/02, at 759).

Appellant proceeded to a jury trial. At trial, Detective Edward Davis testified that he had received an anonymous call on the day after Appellant's arrest. As a result of that call, he ascertained the whereabouts of Appellant,

- 4 -

J.S26032/02

and arranged to have him transported to the homicide unit for questioning. Appellant's counsel did not object to this testimony.   The Commonwealth also introduced evidence concerning Appellant's arrest for retail theft on the day following the murder.   Once again, Appellant's counsel did not lodge an objection to the introduction of this testimony.   Appellant also supplied counsel with the names of alibi witnesses as well as witnesses who would testify regarding Appellant's reputation for peacefulness in the community. Appellant's counsel chose not to call these witnesses at trial.   The jury convicted Appellant of second degree murder, robbery, and possession of an instrument of crime.   The court sentenced Appellant to life imprisonment. Appellant filed this timely direct appeal.

Appellant raises the following issues on appeal:

> WHETHER THE [TRIAL] COURT ERRED IN NOT SUPPRESSING THE ALLEGED CONFESSION GIVEN BY [APPELLANT]?
>
> WHETHER [APPELLANT] WAS DENIED A FAIR TRIAL WITH THE INTRODUCTION OF AN ANONYMOUS TELEPHONE CALL CONNECTING HIM TO THE HOMICIDE AND WITH TRIAL COUNSEL'S FAILURE TO OBJECT TO THE INDIRECT ADMISSION OF HIS HEARSAY?
>
> WHETHER TRIAL COUNSEL WAS INEFFECTIVE IN FAILING TO OBJECT TO TESTIMONY CONNECTING [APPELLANT] TO AN UNRELATED RETAIL THEFT?
>
> WHETHER TRIAL COUNSEL WAS INEFFECTIVE IN NOT CALLING CHARACTER WITNESSES AND ALIBI WITNESSES EVEN THOUGH THEIR NAMES HAD BEEN SUPPLIED TO COUNSEL BEFORE TRIAL?

(Appellant's Brief at 4).

- 5 -

J.S26032/02

In his first issue raised on appeal, Appellant argues his confession should have been suppressed.  Appellant alleges the overwhelming evidence indicated the police beat Appellant until he confessed.  Appellant further alleges the detectives repeatedly denied Appellant's request to speak with counsel.  Appellant concludes the suppression court erred in ruling Appellant gave a voluntary confession.  We disagree.

Our Supreme Court set forth the standard for reviewing a suppression motion as follows:

> [W]e must first determine whether the factual findings are supported by the record, and then determine whether the inferences and legal conclusions drawn from those findings are reasonable.  We may consider the evidence of the witnesses offered by the prosecution, as verdict winner, and only so much of the defense evidence that remains uncontradicted when read in the context of the record as a whole.  We are bound by facts supported by the record and may only reverse if the legal conclusions reached by the court below were erroneous.

*Commonwealth v. Watkins*, 750 A.2d 308, 312 (Pa.Super. 2000) (citation omitted).  Moreover,

> When deciding a motion to suppress a confession, the touchstone inquiry is whether the confession was voluntary.  Voluntariness is determined from a totality of the circumstances surrounding the confession.  The question of voluntariness is not whether the defendant would have confessed without interrogation, but whether the interrogation was so manipulative or coercive that it deprived the defendant of his ability to make a free and unconstrained decision to confess.  The Commonwealth has the burden to proving by a preponderance of the evidence that the defendant confessed voluntarily.

- 6 -

J.S26032/02

> ...When assessing the voluntariness pursuant to the totality of the circumstances, a court should look at the following factors: the duration and means of the interrogation; the physical and psychological state of the accused; the conditions attendant to the detention; the attitude of the interrogator; and any and all other factors that could drain a person's ability to withstand suggestion and coercion.

**Commonwealth v. DiStefano**, 782 A.2d 574, 581 (Pa.Super. 2001) (citation omitted).  Finally, "[i]t is exclusively within the province of the suppression court to determine the credibility of the witnesses and the weight to be accorded their testimony."  **Commonwealth v. Fetter**, 770 A.2d 762, 766 (Pa.Super. 2001).

In the instant case, Appellant filed a motion to suppress his confession based on an allegation that the police choked and beat Appellant until he confessed.  Detectives Gross and McGuffin testified they never beat, harassed, threatened, choked or abused Appellant in any way during the interrogation.  (N.T. Suppression Hearing, 2/12/01, at 565-72, 597-600). Attorney Serota testified that when he met with Appellant following Appellant's statements to the detectives, Appellant informed Serota the detectives had beaten the confession out of him.  Serota testified that he saw an abrasion around Appellant's neck, but did not see any bleeding or bruising on Appellant's face.  Serota stated that he discussed the marks and allegations with Detective Gross, but he did not advise the Detective's superiors of the alleged beating.  (**Id.**, 2/13/02, at 671-73).  Finally, Appellant took the stand and testified that the detectives ignored his

J.S26032/02

repeated requests for counsel, and had choked and beaten him until he confessed.  He also asserted that the confession was false.  (***Id.*** at 691, 724-30).

Thus, issue of the voluntariness of Appellant's confession was resolved through a credibility determination by the suppression court.  ***See Fetter, supra***; ***DiStefano, supra***.  The officers testified that they neither threatened nor beat Appellant during the interrogation.  They also denied Appellant's allegation that he requested counsel during the interrogation.  The suppression court found the detectives' story more credible than that of Appellant.  ***Id.***  In light of the applicable standard of review, we discern no reason to overrule the decision of the suppression court to deny Appellant's motion to suppress.  ***See Watkins, supra***.  Thus, Appellant's first issue raised on appeal warrants no relief.

Next, Appellant alleges his trial counsel was ineffective for failing to object to testimony concerning an anonymous phone call received by the police which implicated Appellant in Green's murder.  Appellant argues the officer's recitation of the actions the officer took following his receipt of the phone called constituted indirect inadmissible hearsay.  Appellant concludes he was prejudiced by counsel's failure to object.  We disagree.

We note:

> The standard of review for claims of ineffective assistance of counsel is well-settled in the Commonwealth.  A criminal defendant sustains a claim of ineffectiveness of counsel by proving by a preponderance of the evidence: (1) that the

J.S26032/02

> underlying claim is of arguable merit; (2) that counsel's performance had no reasonable basis; and (3) that counsel's ineffectiveness worked to his prejudice.

**Commonwealth v. Lassiter**, 554 Pa. 586, 592, 722 A.2d 657, 660 (1998) (internal citations omitted). "If the [underlying] claim is without merit, our inquiry ends because counsel will not be deemed ineffective for failing to pursue an issue which is without basis." **Commonwealth v. Ellis**, 700 A.2d 948, 959 (Pa.Super.1997), *appeal denied*, 556 Pa. 671, 727 A.2d 127 (1998) (citation omitted).

"Hearsay is an out-of-court statement offered to prove the truth of the matter asserted. Hearsay is generally inadmissible as evidence because the competency and veracity of the original speaker are not subject to examination." **Commonwealth v. Underwood**, 500 A.2d 820, 822 (Pa.Super. 1985) (internal citations omitted). However, "[i]t is well settled that an out-of-court statement offered to explain a course of conduct is not hearsay. This Court has repeatedly upheld the introduction of out-of-court statements for the purpose of showing that based on information contained in the statements, the police followed a certain course of conduct that led to the defendant's arrest." **Id.** (internal citations and quotations omitted).

> Such statements do not constitute hearsay since they are not offered for the truth of the matters asserted; rather, they are offered merely to show the information upon which police acted.

> *   *   *

J.S26032/02

> Nevertheless, it cannot be said that every out-of-court statement having bearing upon subsequent police conduct is to be admitted, for there is great risk that, despite cautionary jury instructions, certain types of statements will be considered by the jury as substantive evidence of guilt.  Further, the police conduct rule does not open the door to unbounded admission of testimony, for such would nullify an accused's right to cross-examine and confront the witnesses against him.

***Commonwealth v. Thomas***, 578 A.2d 422, 426-27 (Pa.Super. 1990)

(internal citations omitted).  This Court in ***Thomas*** explained:

> In some previous cases, course of conduct hearsay evidence was permitted despite similarity to impermissible oblique narrative when there was need to explain the course of conduct, and the potential prejudicial impact of the limited oblique narrative type hearsay involved was minimal.  In ***Commonwealth v. Underwood, supra***, the Commonwealth was permitted to explain the course of conduct by the police by disclosing that an **unidentified bystander** had implicated the defendant.   Similarly, in ***Commonwealth v. Carelli***, 546 A.2d 1185, 1198 ([Pa.Super.] 1988), the Commonwealth was permitted to explain the course of conduct by the police by disclosing that an anonymous tip had implicated the defendant. Because the source of the oblique narrative type hearsay was anonymous in both cases, the juries in those cases would be unlikely to accord inappropriate weight to the hearsay statements derived from those anonymous persons related during course of conduct testimony.   In both cases, the out of court identification was essentially harmless, and **was offered merely to fill a gap in the narrative, rather than to buttress the proof of one of the critical elements of the offense**.

***Id.*** at 427-28 (emphasis in original).

In the instant case, the Commonwealth called Detective Edward Davis to testify.  Davis testified that he was on-duty in the early morning hours on the day following Appellant's arrest.  Davis stated he received a phone call

J.S26032/02

from an anonymous caller that morning.  He testified that, based on that phone call, he confirmed Appellant was in custody, contacted the homicide unit, and arranged for Appellant to be transferred to the homicide unit. (N.T. Trial, 2/14/01, at 931-33).  The police subsequently interrogated Appellant concerning Green's murder.  Appellant's counsel did not object to Davis' testimony concerning the actions he took as a result of that phone call.

Davis did not state what the anonymous caller said to him.  This fact alone does not mean Davis' testimony did not constitute inadmissible hearsay.  *See Thomas, supra*.  The implication of Davis' testimony was that the anonymous caller implicated Appellant in the murder of Green. However, the testimony was not used to show that someone had identified Appellant as the shooter.  Rather, it was used to show why the police began to investigate Appellant for the murder.  *See Underwood, supra*.  Because the source of the information was anonymous, the jury was unlikely to accord much weight to the caller's accusation.  *See Thomas, supra* (citing *Underwood, supra*).  If Appellant's counsel had objected to the testimony, the trial court could have properly overruled the objection.  *Id.*  As Appellant's hearsay claim is of no merit, counsel cannot be deemed ineffective for failing to object to Davis' testimony.  *See Lassiter, supra*; *Ellis, supra*.  Therefore, Appellant's second issue raised on appeal is meritless.

J.S26032/02

In his third issue raised on appeal, Appellant argues his trial counsel was ineffective for failing to object to the Commonwealth's references to Appellant's arrest on the unrelated retail theft charge.  Appellant argues his counsel had no reasonable tactical basis for failing to object to the introduction of this evidence.    Appellant concludes his counsel's ineffectiveness denied him a fair trial.  We disagree.

"It is settled that reference to prior criminal activity by the accused, either expressly or by reasonable implication, is impermissible." ***Commonwealth v. Smith***, 552 A.2d 1053, 1060 (Pa.Super. 1988), *appeal denied*, 525 Pa. 581, 575 A.2d 112 (1990).  In fact, our Supreme Court has stated:

> It is a fundamental precept of the common law that the prosecution may not introduce evidence of the defendant's prior criminal conduct as substantive evidence of his guilt of the present charge.  It has been succinctly stated that the purpose of this rule is to prevent the conviction of an accused for one crime by the use of evidence that he has committed other unrelated crimes, and to preclude the inference that because he has committed other crimes he was more likely to commit the crime for which he is being tried.    The presumed effect of such evidence is to predispose the minds of the jurors to believe the accused guilty, and thus effectually to strip him of the presumption of innocence….

***Commonwealth v. Brown***, 489 Pa. 285, 296, 414 A.2d 70, 75 (1980) (internal citations and quotations omitted).

However, even when defense counsel fails to object to the introduction of such evidence,

. J.S26032/02

> counsel's assistance is deemed constitutionally effective
> once we are able to conclude that the particular course
> chosen by counsel had some reasonable basis designed to
> effectuate his client's interests.   The test is not whether
> other alternatives were more reasonable, employing a
> hindsight evaluation of the record.   Although weigh the
> alternatives we must, the balance tips in favor of a finding
> of effective assistance as soon as it is determined that
> counsel's decisions had any reasonable basis.

**Commonwealth v. Penrose**, 669 A.2d 996, 1000 (Pa.Super. 1995), *appeal denied*, 545 Pa. 669, 681 A.2d 1342 (1996) (internal citations and quotations omitted).

In the instant case, the trial court held an *in camera* discussion with counsel for both Appellant and the Commonwealth concerning Appellant's arrest for shoplifting at the sporting goods store.   (N.T. *In Camera* Discussion, 2/13/02, at 812).  The trial court stated it would only allow the Commonwealth to elicit evidence to show Appellant was in custody on an "unrelated charge" when he was questioned concerning the murder of Green.  (**Id.**)  The Commonwealth argued the evidence of Appellant's arrest for shoplifting should be admitted because it bolstered Appellant's statement that he wanted to get arrested because he felt guilty about the murder. Appellant's counsel indicated that he might want the information regarding the arrest to come in because Appellant apparently went back to the store and tried to pay for the sneakers, and this would be inconsistent with a theory that Appellant tried to get caught because he felt guilty.  (**Id.** at 814).   Appellant's counsel stated that he wished to speak with his client

- 13 -

J.S26032/02

concerning the matter, and the trial court allowed Appellant's counsel to decide the matter after consultation with Appellant. The following day, the Commonwealth introduced evidence concerning Appellant's arrest. Appellant's counsel did not object to the introduction of this evidence. On cross-examination, Appellant's counsel attempted to prove Appellant tried to return to the store to pay for the sneakers. (N.T. Trial, 2/14/01, at 898-901).

Appellant's trial counsel chose not to object to the introduction of evidence concerning an unrelated theft committed by Appellant. ***See Brown, supra; Smith, supra***. Thus, Appellant's underlying claim is of arguable merit. ***See Lassiter, supra***. However, Appellant's counsel was faced with a rather difficult challenge of having to deal with Appellant's statement to the police that he committed the theft because he felt guilty for shooting Green and he wanted to get caught. Although Appellant's statement had yet to be read to the jury, counsel obviously knew it was going to come in at some point in the Commonwealth's case. Faced with this challenge, counsel attempted to show Appellant tried to pay for the sneakers. This tactic was an effort to rebut the inference that Appellant simply wanted to get caught for killing Green. Appellant's counsel's attempt to rebut the inference had a reasonable basis. Therefore, counsel's failure to object does not constitute ineffective assistance of counsel. ***See Penrose, supra***. Moreover, the trial court informed Appellant's counsel that it was

- 14 -

·J.S26032/02

going to allow the Commonwealth to state Appellant was in custody on "an unrelated charge." Appellant had been charged with a violent murder. Rather than allow the jury to speculate as to what the "unrelated charge" was, Appellant's counsel allowed to jury to hear Appellant was in jail for a comparatively minor, non-violent offense, so he could present more valuable refutation. Under the facts of this case, we conclude counsel's decision to allow the challenged evidence was reasonable. *Id.* Therefore, Appellant's third issue raised on appeal must fail.

Finally, Appellant argues his trial counsel was ineffective for failing to call certain alibi and character witnesses on Appellant's behalf. Appellant alleges he provided counsel with the names of these witnesses before trial and counsel simply chose not to call them. Appellant concludes that had these witnesses been called, there is a reasonable probability that the outcome at trial would have been different. We disagree.

Initially, we must note:

> To prove that counsel was ineffective for failing to investigate or call a witness, a defendant must show how the testimony of the witness would have been beneficial under the circumstances of the case. In addition, a defendant must demonstrate that: (1) the witness existed; (2) the witness was available to testify for the defense; (3) counsel knew of or should have known of the existence of the witness; (4) the witness was willing to testify for the defense; and (5) the absence of the witness' testimony was so prejudicial as to have denied the defendant a fair trial.

- 15 -

.J.S26032/02

***Commonwealth v. Days***, 718 A.2d 797, 803 (Pa.Super. 1998) (internal citations omitted).

"[T]rial counsel will not be found ineffective for failing to investigate or call a witness unless there is some showing by the appellant that the witness's testimony would have been helpful to the defense." ***Commonwealth v. Brown***, 767 A.2d 576, 582 (Pa.Super. 2001) (citing ***Commonwealth v. Auker***, 545 Pa. 521, 548, 681 A.2d 1305, 1319 (1996)). "A failure to call a witness is not *per se* ineffective assistance of counsel for such decision usually involves matters of trial strategy." ***Id.***

Also,

> an attorney who fails to use character evidence on behalf of a defendant can be deemed ineffective if there is no reasonable basis for such failure.  To be admissible, however, character evidence must be relevant, having a proper relation to the subject-matter of the charge at issue...and such evidence is permitted on the theory that general reputation reflects character and a person with a good character for peaceableness, for example, would not in all reasonable probability commit an unlawful act of violence.

***Commonwealth v. Morley***, 658 A.2d 1357, 1363 (Pa.Super. 1995), *affirmed*, 545 Pa. 420, 681 A.2d 1254 (1996) (internal citations and quotations omitted).  Moreover, "[e]vidence of good character offered by a defendant in a criminal prosecution must be limited to his general reputation for the particular trait or traits of character involved in the commission of the crime charged.  In a case where the crime charged is one of violence, evidence of reputation for non-violent behavior is admissible."

J.S26032/02

*Commonwealth v. Harris*, 785 A.2d 998, 1000 (Pa.Super. 2001) (citations omitted).

In addition, trial counsel will not be deemed ineffective for failing to call an alibi witness where calling the witness "could have done more harm than good to the defense," or where the witness' obvious bias would have rendered the alibi virtually meaningless. *Commonwealth v. Davis*, 554 A.2d 104, 112 (Pa.Super. 1989), *appeal denied*, 524 Pa. 617, 751 A.2d 380 (1989). "The decision of whether to call an alibi witness under such circumstances is obviously a matter of trial tactics not subject to a challenge on ineffectiveness grounds after the fact." *Id.*

Here, it is uncontested that Appellant supplied trial counsel with the names of twelve witnesses to testify on his behalf, and that these witnesses were "ready, willing, and able" to testify for Appellant. *See Days, supra*. The witnesses were friends, neighbors, and relatives of Appellant. Each witness would have testified as a character witness for Appellant and have provided affidavits to this effect.

However, many of the witnesses stated that they would testify that they felt Appellant was a peaceful person. Insofar as they do so, those statements constitute individual opinions as to Appellant's peaceful nature and would have been inadmissible at trial. *See Harris, supra*. Because their proposed testimony would have been inadmissible, trial counsel cannot be deemed ineffective for failing to call Appellant's "character" witnesses.

J.S26032/02

*Id.*  In fact, only the affidavit of Kevin Clark (Appellant's stepfather) states that Appellant had an excellent **reputation** for peacefulness in the community.  *See Morley, supra*.  Although Mr. Clark would have testified that Appellant had an excellent reputation for peacefulness in the community, Appellant does not show that the absence of this testimony was so prejudicial as to deny him a fair trial.  *See Days, supra*.  The evidence adduced against Appellant at trial was overwhelming.  There is no indication that a character witness would have changed the outcome at trial.  Thus, counsel cannot be deemed ineffective for failing to call Mr. Clark as a character witness.  *Id.*

Also, Appellant's decision not to call Appellant's stepfather as an alibi witness was a strategic one.  Appellant's stepfather's obvious bias would have rendered his testimony virtually meaningless.  *See Davis, supra.* Thus, trial counsel cannot be deemed ineffective for failing to call Appellant's stepfather as an alibi witness.  *Id.*  Therefore, Appellant's final claim on appeal warrants no relief.  Accordingly, we affirm Appellant's judgment of sentence.

Judgment of sentence affirmed.

EXHIBIT C

IN THE SUPERIOR COURT OF PENNSYLVANIA

COMMONWEALTH OF PENSYLVANIA    :    Superior Court Docket
                                          No. 1586 EDA 2007

            V.                 :

COPY
ORIGINAL FILED IN SUPERIOR COURT
MAR 0 5 2008
EASTERN DISTRICT

Gabriel Gonzalez,               :
        Appellant

APPEALS
MAR 0 7 2008
DISTRICT ATTORNEY'S OFFICE

Brief for Appellant

APPEAL FROM THE DENIAL OF POST CONVICTION RELIEF BY THE
COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY, CRIMINAL
DIVISION ON AUGUST 30, 2007 AT NO. CP-51-CR-0303521-2000

DENNIS TURNER, ESQUIRE
ATTORNEY FOR APPELLANT
ATTORNEY'S ID NO. 3334
1315 WALNUT STREET, SUITE 1326
PHILADELPHIA, PA. 19107
(215) 546-3731

## **TABLE OF CONTENTS**

TABLE OF CITATIONS                                         iii

STATEMENT OF JURSIDICTION                                    1

STATEMENT OF SCOPE AND STANDARD OF REVIEW                   2

ORDER IN QUESTION                                           3

STATEMENT OF THE QUESTIONS INVOLVED                         4

STATEMENT OF THE CASE                                       5

SUMMARY OF THE ARGUMENT                                    12

ARGUMENT

    The trial court erred in denying appellant's PCRA
    petition which asserted that trial counsel was
    ineffective for ("failing to call him to the stand
    during trial) interfering with his freedom to testify
    in his own behalf, and/or (2) by giving him specific
    advice so unreasonable as to vitiate his knowing and
    intelligent decision not to testify                    13

CONCLUSION                                                 19

TRIAL COURT OPINION                                        20

## TABLE OF CITATIONS

Baird v. Koemer,
279 F.2d 623, 629-30 (9th Cir. 1960)                 16


Commonwealth v. Battle,
2005 PA Super 310, 883 A.2d 641,                       2
647 (Pa. Super. 2005)


Commonwealth v. Breisch,                             14
719 A.2d 352, 355 (Pa. Super. 1998)


Commonwealth v. Hall, 549 Pa. 269,
290, 701 A.2d 190, 200-201 (1997),
cert. denied, 523 U.S. 1082, 118 S. Ct. 1534,
140 L. Ed. 2d 684 (1998)                             13


Commonwealth v. Jermyn, 516 A2d. 460,
533 A.2d 74 (1987)                                   17


Commonwealth v. Neal, 421 Pa. Super. 478,
618 A.2d 438 (1992)                                  18


Commonwealth v. Nieves, 560 Pa. 529; 7
46 A.2d 1102 (2000)                                  17


Commonwealth v. O'Bidos, 2004 PA Super 131,
849 A.2d 243, 249 (Pa. Super. 2004),
appeal denied, 580 Pa. 696, 860 A.2d 123 (2004)   14, 17


Commonwealth v. Snyder, 2005 PA Super 83,
870 A.2d 336, 345 (Pa. Super. 2005)                  13

Commonwealth v. Thomas, 2001 PA Super 263,
783 A.2d 328 (Pa. Super. 2001)                    14


42 PA. C.S. § 742                                  1


Pa. R. App. 341                                    1


42 Pa.C.S. § 5916                                 15

Pa. Code of Professional Responsibility
Rule 1.6                                          15


Pa. Code of Professional Responsibility
Rule 3.3                                          15

## **<u>STATEMENT OF JURISDICTION</u>**

This court has jurisdiction over this appeal pursuant to:

  (a) 42 PA. C.S. § 742 (exclusive appellate jurisdiction

      in the Superior Court of Pennsylvania from the final

      orders of the Court of Common Pleas); and

  (b) Pa. R. App. 341 (a) appeals as of right from the

      final orders of the lower court).

## STATEMENT OF SCOPE AND STANDARD OF REVIEW

The appellate standard in reviewing a PCRA court order is abuse of discretion. The Superior Court will determine only whether the court's order is supported by the record and free of legal error. Commonwealth v. Battle, 2005 PA Super 310, 883 A.2d 641, 647 (Pa. Super. 2005).

## ORDER IN QUESTION

The order that is the subject of this appeal is the denial of Post Conviction Relief on August 30, 2007 by the Court of Common pleas of Philadelphia County at Nos. CP-51-CR-0303521-2000.

## STATEMENT OF THE QUESTIONS INVOLVED

1)    Whether the trial court erred in denying appellant's PCRA petition which asserted that trial counsel was ineffective for giving him specific advice so unreasonable as to vitiate his knowing and intelligent decision not to testify in his own behalf?

**STATEMENT OF THE CASE**

Procedural History

February 21, 2001, a jury convicted Gabriel Gonzalez, appellant herein, of second degree murder, robbery and possession of an instrument of crime. The Honorable David N. Savitt imposed a sentence of life imprisonment without parole on the charge of second degree murder, and a concurrent term of one (1) to two (2) years on the charge of possessing an instrument of crime. Thereafter, on March 1, 2001, post-sentence motions were filed on behalf of Gonzalez, which were subsequently withdrawn on June 7, 2001. On July 2, 2001, Gonzalez filed a notice of appeal and on August 7, 2002, the Superior Court affirmed the trial court's judgment of sentence. On September 6, 2002, Gonzalez filed a petition for allowance of appeal. Said petition was denied by order of the Supreme Court of Pennsylvania on September 3, 2004. The Honorable Sandy L. V. Byrd was assigned the case after Judge Savitt assumed senior status. On February 9, 2004, Gonzalez filed his first, timely, pro se petition under the Post Conviction Relief Act ("PCRA") 42 Pa. C.S. § 9541 et seq. Counsel was appointed and filed an amended petition on May 18, 2006. On

October 20, 2006, Gonzalez filed a counseled revised amended post conviction petition with a consolidated memorandum of law. After an evidentiary hearing this court dismissed Gonzalez's petition on May 18, 2007. On June 11, 20071 Gonzalez filed a timely notice of appeal. By order of this court, dated July 2, 2007, Gonzalez was directed to file a Statement of Matters Complained of on Appeal. Said statement was filed on July 10, 2007.


Summary of the facts


The relevant facts of this case are as follows:


On the evening of February 29, 2000, Vincent Green was working as a pizza delivery driver in Philadelphia. At approximately 11:00 p.m. the manager of the pizza shop gave Green some pizzas to deliver. As Green conversed with Mr. Sulpizio, his manager, an unknown assailant awaited him in his unlocked delivery vehicle. It is surmised that the assailant ripped out the dome light in the vehicle so as not to alert someone to his presence. Upon entering the delivery vehicle and confronting his assailant, Green was

6

shot in the chest at point blank range. After hearing the gunshot, Mr. Sulpizio glanced outside and noticed a black man about 5'8" or 5'9", wearing something bright up top (e.g. hat or turtleneck), exit Green's car and flee.(N.T. 2-13-01 manuscript, p. 197, 207, 211) Green stumbled back into the pizza shop and collapsed in front of his manager. Mr. Sulpizio called 911 and Green was rushed to the hospital. Officer Hernandez, who responded to a radio call regarding a "shooting", spotted a suspect in the immediate vicinity who subsequently eluded detection, that met the flash description of the assailant. Hernandez describes that person as being a dark male with an afro wearing a dark suit with what appeared to be like "a red sweater or hoodie type around his neck". (N.T. 2-13-01 manuscript, p. 226-227, 236-237)[1] A few hours later, Green was pronounced dead at the hospital. (N.T. Trial, 2/15/01, at 1107-11).

The following day police officers were summoned to a sporting goods store by a security guard. The security guard informed the officers that a man (Gabriel Gonzalez) was sitting in a parked automobile, had just stolen a pair of sneakers. The police approached Gonzalez and retrieved

---

[1]   Gabriel Gonzalez has a very light skinned complexion. (N.T. 5-11-07 manuscript, p. 121-122)

the sneakers. The police subsequently arrested Gonzalez for
retail theft.

Early the next morning, while Gonzalez was still in jail on
the retail theft charge, the police received an anonymous
phone call, implicating him in the murder of Green. At
approximately 4:45 a.m. that morning, Detective Gross
bought Gonzalez into an interview room at the homicide
unit. Gross told Gonzalez he wished to speak with him
regarding the murder of Green. Gross read Gonzalez his
Miranda warnings. Gross attested that when he finished
reading Gonzalez these warnings, Gonzalez stated "you might
find [my] fingerprints inside the car because [Green] asked
me to fix his inside light." (Id., 2/14/01, at 943)[2]. Gross
immediately ceased speaking with Gonzalez, left the
interview room, and retrieved a portable typewriter. Gross
also bought Detective McGuffin into the interview room.
Again, Gross read Gonzalez his Miranda warnings, and
McGuffin typed them out on the typewriter. Gonzalez read
each of the warnings and initialed and signed his name.
Gross left McGuffin to complete the interview with

---

[2] It should be noted that no fingerprints belonging to Gabriel
Gonzalez were ever recovered from anywhere on or in the pizza
delivery truck. (N.T. 2-13-01 manuscript, p. 181)

Gonzalez. After one and one-half hours, Gonzalez allegedly confessed to the shooting.

According to Gabriel Gonzalez's purported statement, on the night in question he had split a six-pack of beer with his friend, "Shiz". At 11:00 p.m., Shiz left to see his girlfriend and Gonzalez went home and retrieved his handgun. Gonzalez stated that he entered Green's car and hid in the backseat. When Green entered the car, he saw Gonzalez lying in the backseat and began throwing money at him. Gonzalez then shot Green and fled with approximately two hundred dollars. Gonzalez supposedly explained that he fled down an alley towards his house, threw the gun into his backyard, and hid when he saw police looking for him. Per the statement, Gonzalez indicated that he had gone to the sporting goods store the following day and stole the sneakers because he felt "bad" for what he had done to Green the previous night, and he wanted to get caught. (Id, at 1010-16).

At approximately 11:00 a.m. that morning Mr. Serota, Gonzalez's attorney, arrived at the police station. Gross showed Serota Gonzalez's signed statement and bought him in

9

to speak privately with Gonzalez. (Id at 966-70). Later
that day, the police executed a search warrant for
Gonzalez's residence. In the basement of the residence,
police found the clothes Gonzalez claimed he was wearing on
the night of the murder, and a gun box for a .45 caliber
handgun.[3] The police, however, were unable to ascertain the
whereabouts of the handgun.

The Commonwealth charged Gabriel Gonzalez with murder,
robbery and possession of an instrument of crime. Prior to
trial, Gonzalez retained new counsel. Gonzalez filed a
pretrial motion to suppress any statements he had made to
the police while in custody. Gonzalez asserted detectives
Gross and McGuffin beat and choked him in the interrogation
room, and that is why he confessed. Mr. Serota testified
that Gonzalez told him the two detectives had beaten and
choked him until he confessed. The suppression court ruled
Gonzalez's statements to the police were voluntary, and
denied his motion to suppress. (N.T. Suppression Hearing,
2/13/02, at 759).

---

[3] There was no forensic blood evidence or ballistic evidence
connecting Gonzalez to the homicide of Green.

10

Gabriel Gonzalez proceeded to a jury trial. At trial, Detective Edward Davis testified that he had received an anonymous call on the day after Gonzalez's arrest. As a result of that call, he ascertained the whereabouts of Gonzalez, and arranged to have him transported to the homicide unit for questioning. The Commonwealth also introduced evidence concerning Gonzalez's arrest for retail theft on the day following the murder.

Gabriel Gonzalez supplied trial counsel with the names of alibi witnesses as well as witnesses who would testify regarding Gonzalez's reputation for peacefulness in the community. Gonzalez's counsel chose not to call these witnesses at trial.[4] The jury convicted Gonzalez of second degree murder, robbery, and possession of an instrument of crime. The court sentenced Gabriel Gonzalez, who was 19 years of age at the time and had never been arrested before, to life imprisonment. The primary evidence against him was the statement taken from him by the police.

---

[4] The issue as to why these witnesses were no called was litigated on appeal and thus could not be addressed in PCRA proceedings. 42 Pa.C.S. § 9543 (a)(3)

11

## SUMMARY OF THE ARGUMENT

Trial counsel's advise to Gabriel Gonzalez that should he attest to his innocence, counsel would tell the court that Gonzalez had confessed to him that he committed the murder, was so unreasonable as to vitiate Gonzalez's knowing and intelligent decision not to testify in his own behalf.

**ARGUMENT**

**The trial court erred in denying appellant's PCRA petition which asserted that trial counsel was ineffective for giving him specific advice so unreasonable as to vitiate his knowing and intelligent decision not to testify in his own behalf.**

It is well settled in this Commonwealth that counsel is presumed effective and as such, appellant bears the burden of establishing his claim that his trial counsel was ineffective. See Commonwealth v. Hall, 549 Pa. 269, 290, 701 A.2d 190, 200-201 (1997), cert. denied, 523 U.S. 1082, 118 S. Ct. 1534, 140 L. Ed. 2d 684 (1998). To prove ineffective assistance of his trial counsel, appellant must show (i) that the underlying claim is of arguable merit; (ii) that counsel had no reasonable basis designed to effectuate appellant's interests for the act or omission in question; and (iii) that counsel's ineffectiveness actually prejudiced appellant. See Commonwealth v. Snyder, 2005 PA Super 83, 870 A.2d 336, 345 (Pa. Super. 2005). Failure to satisfy any prong of the test requires that the claim be dismissed. See Commonwealth v. O'Bidos, 2004 PA Super 131, 849 A.2d 243, 249 (Pa. Super. 2004), appeal denied, 580 Pa. 696, 860 A.2d 123 (2004).

13

Gabriel Gonzalez argues that trial counsel was ineffective because he interfered with his right to testify. Resolution of this issue is guided by the rule of law articulated in Commonwealth v. Thomas, 2001 PA Super 263, 783 A.2d 328 (Pa. Super. 2001), which provides that the decision to testify on one's own behalf is ultimately to be made by the accused after full consultation with counsel. In order to support a claim that counsel was ineffective for "failing to call the appellant to the stand," [the appellant] must demonstrate either that (1) counsel interfered with his client's freedom to testify, or (2) counsel gave specific advice so unreasonable as to vitiate a knowing and intelligent decision by the client not to testify in his own behalf. Id. at 334. "Counsel is not ineffective where counsel's decision to not call the defendant was reasonable." Commonwealth v. Breisch, 719 A.2d 352, 355 (Pa. Super. 1998).

Instantly, appellant testified at PCRA hearing that he desired to testify at trial that the purported confession the Commonwealth introduced into evidence was coerced from him by the police and wasn't true. However, he was advised by trial counsel that the jury wouldn't believe his

testimony over his alleged statement. (N.T. 5-11-07, p.33, 67) Gonzalez further attested that trial counsel also advised him, after he testified during suppression that the statement police obtained from him was coerced and not true, that should he testify similarly during trial and deny guilt, he (counsel) would inform the court that Gonzalez disclosed to him that he committed the murder. (N.T. 5-11-07, pp. 111-116)[5]

Gabriel Gonzalez contends that trial counsel's advice was unreasonable under the circumstances as he, absent waiver, would have been protected from such disclosures by counsel pursuant to attorney-client privilege. See 42 Pa.C.S. § 5916 and Rule 1.6. of the Pa. Code of Professional Responsibility, "Confidentiality of Information". See also Rule 3.3. of the Pa. Code of Professional Responsibility, "Candor Toward the Tribunal" which relates in pertinent part: "A lawyer may refuse to offer evidence, *other than the testimony of a defendant in a criminal matter*, that the lawyer reasonably believes is false." (Emphasis added) Cf. ABA Opinions 314 (1965), 274 (1946) and 268 (1945):

---

[5] It should be noted that Gabriel Gonzalez denies having told trial counsel that he committed the murder and further, steadfastly maintains his innocence. (N.T. 5-11-07, p. 37, 67)

"While it is the great purpose of law to ascertain
the truth, there is the countervailing necessity of
insuring the right of every person to freely and
fully confer and confide in one having knowledge of
the law, and skilled in its practice, in order that
the former may have adequate advice and a proper
defense. This assistance can be made safely and
readily available only when the client is free from
the consequences of apprehension of disclosure by
reason of the subsequent statements of the skilled
lawyer. Baird v. Koemer, 279 F.2d 623, 629-30 (9th
Cir. 1960).

It is the "apprehension of disclosure" occasioned by the
prospect of his counsel becoming a witness against him in
the mist of a homicide trial, and counsel telling Gonzalez
that the jury wouldn't believe his testimony over his
alleged statement, that chilled Gonzalez's desire and
vitiated his intelligent decision not to testify.


The right of the accused to testify on his-own behalf is a
fundamental tenet of American Jurisprudence and is
explicitly guaranteed by Article I, Section 9 of the

16

Pennsylvania Constitution. Commonwealth v. Jermyn, 516 A2d.
460, 533 A.2d 74 (1987).  The decision to forgo such a
significant right in a [homicide] case can not be based on
mistaken guidance. Commonwealth v. Nieves, 560 Pa. 529; 746
A.2d 1102 (2000). Gabriel Gonzalez has thus established
that the underlying claim is of sufficient arguable merit
to satisfy the first prong of the ineffective assistance
test. O'Bidos, Id.


With regard to the second prong, counsel had no reasonable
basis designed to effectuate Gonzalez's interests by
presenting what was in-affect an underdeveloped defense. It
is apparent that counsel's trial strategy entailed putting
the issue of the voluntariness of Gonzalez's purported
confession before the jury. In this regard trial counsel
called Attorney Seruta to attest to the bruises Seruta
observed on Gonzalez after Gonzalez was interrogated by
homicide detectives. (N.T. 5-11-07, p. 99-102) However
logically, the undeveloped component in this strategy was
Gonzalez's testimony that the bruises Seruta observed,
resulted from the physical abuse inflicted upon him by
homicide detectives that coerced him into making a
statement. (N.T. 2-13-01, p. 175) An underdeveloped defense

17

cannot be said to be in the strategic best interest of
Gonzalez. Instantly Gonzalez, who had no crimen falsi
convictions, was the only person that could attest to the
involuntariness of the purported confession and refute its
veracity. (N.T. 5-11-07, p. 37, 67)

Finally with regard to the third prong, trial counsel's
conduct prejudiced Gabriel Gonzalez because the outcome of
the case turned primarily on the believability of the
purported confession. (N.T. 5-11-07, p. 99)  Therefore, the
testimony that appellant would have given to the effect
that the confession was coerced and untrue, would have
rebutted said statement, and, as such, was essential
defense testimony. Commonwealth v. Neal, 421 Pa. Super.
478, 618 A.2d 438 (1992).

Accordingly, the ineffectiveness of trial counsel which, in
the circumstances of the instant particular case, so
undermined the truth-determining process that no reliable
adjudication of guilt or innocence could have taken place,
such that Gabriel Gonzalez is entitled to relief pursuant
to 42 Pa.C.S. 9543 (a)(2)(ii).

## CONCLUSION

Wherefore for the reason set forth heretofore, appellant Gabriel Gonzalez prays this honorable court will grant him a new trial, as justice under the circumstances so requires.

Respectfully submitted,

Dennis Turner, Esquire
Counsel for Appellant
Gabriel Gonzalez

FILED

AUG 3 0 2007

Criminal Appeals Unit
First Judicial District of PA

**IN THE COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY**
**CRIMINAL TRIAL DIVISION**

| | | |
|---|---|---|
| **COMMONWEALTH OF PENNSYLVANIA** | : | **CP-51-CR 0303521-2000** |
| | : | |
| | : | |
| **V.** | : | **SUPERIOR COURT** |
| | : | |
| | : | |
| **GABRIEL GONZALEZ** | : | **1586  EDA 2007** |
| | : | |
| | : | |

**OPINION**

**Byrd, J.**                                                    **August 30, 2007**

On February 21, 2001, a jury convicted defendant Gabriel Gonzalez of second degree murder, robbery and possession of an instrument of crime.  The Honorable David N. Savitt imposed a sentence of life imprisonment without parole on the charge of second degree murder, and a concurrent term of one (1) to two (2) years on the charge of possessing an instrument of crime.  Thereafter, on March 1, 2001, defendant filed post-sentence motions which were subsequently withdrawn on June 7, 2001.   On July 2, 2001,  defendant filed a notice of appeal and on August 7, 2002, the Superior Court affirmed the trial court's judgment of sentence.  On September 6, 2002, defendant filed a petition for allowance of appeal.  Said petition was denied by order of the Supreme Court of Pennsylvania on September 3, 2004.  This court was assigned the case after Judge Savitt assumed senior status.

On February 9, 2004, defendant filed his first, timely, *pro se* petition under the Post Conviction Relief Act ("PCRA") 42 Pa. C.S. § 9541 *et seq.* Counsel was appointed and filed an amended petition on May 18, 2006. On October 20, 2006, defendant filed a revised amended post conviction petition with a consolidated memorandum of law. After an evidentiary hearing this court dismissed defendant's petition on May 18, 2007. On June 11, 20071 defendant filed a timely notice of appeal. By order of this court, dated July 2, 2007, defendant was directed to file a Statement of Matters Complained of on Appeal. Said statement was filed on July 10, 2007.

## STATEMENT OF THE FACTS

On February 29, 200, at approximately 11:00 p.m. defendant entered the backseat of the unlocked delivery vehicle of decedent Vincent Green. Mr.Green entered his vehicle shortly thereafter, sat down and noticed defendant in the backseat. A terrified Vincent Green then began throwing money at defendant. Defendant pointed a gun at the victim and shot him at point blank range in his chest.

## STATEMENT OF MATTERS COMPLAINED OF ON APPEAL

Defendant raised the following issues in his Statement of Matters Complained of on Appeal, in accordance with Pa. R.A.P. 1925 (b)[1]:

> The PCRA court erred in denying relief as defendant demonstrated during evidentiary hearing that trial counsel was ineffective for ("failing to call him to the stand during trial) interfering with his freedom to testify in his own behalf, and/or (2) by giving him specific advice so unreasonable as to vitiate his knowing and intelligent decision not to testify in his own behalf, i.e. trial counsel told defendant, after defendant testified during suppression that the statement police obtained from him was coerced and not true, that should he testify similarly during trial that he did not commit the murder, he (trial counsel) would tell the trial Judge that the defendant committed perjury, as defendant allegedly told him in confidence that he committed the murder.

---

[1] The following is a verbatim account of defendant's statement.

*Commw. v. Gonzalez*　　2

## DISCUSSION

In his PCRA petition, defendant claims ineffective assistance of trial counsel.  A defendant may be entitled to relief under the PCRA if he is able to plead and prove that a conviction or sentence resulted from ineffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place.  42 Pa. C.S. § (a)(2)(1).  The law requires the presumption that counsel was effective, unless the petitioner can fulfill his burden and prove otherwise.  Commonwealth v. Payne, 794 A.2d 902, 906 (Pa. Super. 2002), appeal denied, 808 A.2d 571 (2002).  In order for one to succeed on an ineffective assistance of counsel claim, that defendant bears the burden of demonstrating all of the following:  "(1) the underlying claim is of arguable merit; (2) that counsel had no reasonable strategic basis for his or her action or inaction; and (3) but for the errors and omissions of counsel, there is a reasonable probability that the outcome of the proceeding would have been different."  Commonwealth v. Kersteter, 877 A.2d 466, 468 (Pa. Super. 2005), citing Commonwealth v. Kimball, 724 A.2d 326, 333 (Pa. 1999).  Furthermore, counsel's choices cannot be evaluated in hindsight, but rather should be examined in the light of the circumstances at that time.  Commonwealth v. Hardcastle, 701 A.2d 541, 547 (1997). Even if counsel's course of conduct lacked a reasonable basis, a defendant is not entitled to relief if he fails to demonstrate the requisite prejudice necessary to prevail on a claim of ineffective assistance of counsel.  Commonwealth v. Douglas, 645 A.2d 226, 232 (1994). Where a defendant alleges that counsel has interfered with his right to testify, he "must prove either '(1) that counsel interfered with the defendant's right to testify, or (2) that counsel gave specific advice so unreasonable as to vitiate a knowing and intelligent decision to testify on

his own behalf." Commonwealth v. Lawson 762 A.2d 753 (Pa. Super. 2000). *citing* Commonwealth v. Breisch, 719 A.2d 352 (Pa. Super. 1998).

     The evidence from the May 11, 2007 PCRA evidentiary hearing, demonstrates that trial counsel's representation was effective and within the range of competence of criminal attorneys. Indeed, at defendant's PCRA evidentiary hearing, trial counsel testified that he advised his client on numerous occasions of his constitutional right to testify. (N.T., 5/11/2007, 96, 109).    Trial counsel also stated under oath that he advised defendant of the consequences of testifying and allowed him to make the final decision as to whether to testify. (N.T., 5/11/2007, 96, 109). According to trial counsel, defendant made the ultimate decision not to testify. (N.T., 5/11/2007, 96, 112).

     Herein, defendant has failed to satisfy his burden and demonstrate that there existed the requisite prejudice necessary to support a claim of ineffective assistance of counsel.  Defendant presented no evidence to show that trial counsel did not have a strategic basis for his course of conduct, or that but for trial counsel's choices, the outcome of the proceedings would have been different.    Indeed, the decision as to whether or not to testify was left to defendant. Furthermore, other than his mere assertions, defendant did not offer any evidence that counsel interfered with his right to testify or that trial counsel's advice was so unreasonable as to vitiate a knowing and intelligent decision by defendant to forego taking the stand.  In fact, this court found trial counsel's testimony at the PCRA evidentiary hearing to be credible, and accepted his version of the disputed facts.

In light of the foregoing, the dismissal of defendant's PCRA petition should be AFFIRMED.

BY THE COURT,

Sandy L.V. Byrd, J.

Commonwealth v. Gabriel Gonzalez                    CP-51-CR-0303521-2000

## **PROOF OF SERVICE**

I hereby certify that I am this day serving the foregoing Court Order upon the person(s), and in the manner indicated below, which service satisfies the requirements of Pa. R. Crim. P. 114:

Defense Counsel:      Dennis Turner, Esquire
                      Suite 1326
                      1315 Walnut Street
                      Philadelphia, PA 19107


Type of Service:      (x) First Class Mail      ( ) Personal        () Certified

District Attorney:    Hugh J. Burns, Jr., Esquire
                      Chief, Appeals Unit
                      Philadelphia District Attorney's Office
                      Three South Penn Square
                      Philadelphia, PA 19107-3499


Type of Service:      (x) First Class Mail      ( ) Personal        () Certified

Defendant:            Gabriel Gonzalez
                      Inmate # EN4241
                      SCI Somerset
                      1590 Walters Mill Road
                      Somerset, PA 15510-001


Type of Service:      () First Class Mail       ( ) Personal        (x) Certified



Date:   8/30/07

Law Clerk's Signature

.

# Exhibit D

J. S45018/08

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | :  IN THE SUPERIOR COURT OF |
| | :       PENNSYLVANIA |
| Appellee | : |
| | : |
| v. | : |
| | : |
| GABRIEL GONZALEZ, | : |
| | : |
| Appellant | :  No. 1586 EDA 2007 |

Appeal from the PCRA Order entered May 18, 2007,
In the Court of Common Pleas of Philadelphia County,
Criminal Division at No. CP-51-CR-0303521-2000

BEFORE:  GANTMAN, DONOHUE and HUDOCK, JJ.

MEMORANDUM:                          **FILED AUGUST 18, 2008**

Gabriel Gonzalez ("Gonzalez") appeals from the dismissal of his petition filed pursuant to the Post Conviction Relief Act ("PCRA"). Following our review, we affirm.

On February 21, 2001, a jury convicted Gonzalez of second degree murder and sentenced to life imprisonment. On appeal, this Court affirmed the judgment of sentence and the Supreme Court of Pennsylvania denied Gonzalez's petition for allowance of appeal. Gonzalez then filed a timely PCRA petition, which the PCRA court dismissed after an evidentiary hearing.

This appeal followed, in which Gonzalez raises a single issue for our consideration, namely whether his trial counsel was ineffective for advising

J. S45018/08

him not to testify on his own behalf at trial.  Appellant's Brief at 4.  When reviewing the action of a PCRA court, this Court will not disturb the PCRA court's ruling unless it is unsupported by the record or contains an error of law.  ***Commonwealth v. Stemple***, 940 A.2d 504, 508 (Pa. Super. 2008).

It is well established that counsel is presumed to be effective and an appellant has the burden of proving otherwise.  ***Commonwealth v. Descar***, 798 A.2d 758, 759 (Pa. Super. 2002).  "To establish a claim of ineffective assistance of counsel, Appellant must demonstrate (1) the underlying claim is of arguable merit; (2) counsel's action or inaction lacked any reasonable basis designed to effectuate Appellant's interest; and (3) but for the errors and omissions of counsel, there is a reasonable probability that the outcome of the proceedings would have been different." ***Commonwealth v. Taylor***, 933 A.2d 1035, 1041 (Pa. Super. 2007). The failure to satisfy any prong of this test requires rejection of the claim.  ***Commonwealth v. Rega***, 593 Pa. 659, 696, 933 A.2d 997, 1018 (2007).

Police obtained a confession from Gonzalez.  Prior to trial, Gonzalez (through trial counsel) unsuccessfully attempted to exclude the confession through a motion to suppress.  Gonzalez contends that the confession was coerced and untrue and that he desired to testify at trial to explain this to the jury, but that trial counsel, Tyriq El-Shabazz ("El-Shabazz"), persuaded him not to do so.  Appellant's Brief at 14.  Gonzalez argues that this advice

- 2 -

J. S45018/08

was "so unreasonable as to vitiate Gonzalez's knowing and intelligent decision not to testify in his own behalf." Appellant's Brief at 12.

At the PCRA evidentiary hearing, both Gonzalez and El-Shabazz testified. Gonzalez testified in general conformity with the position he takes now -- that is, that he wanted to testify at trial to cast doubt on the validity of his confession, but that El-Shabazz advised him not to do so. N.T., 5/11/07, at 33. In his testimony, El-Shabazz did not dispute that he advised Gonzalez not to testify. Instead, El-Shabazz testified that he advised Gonzalez not to testify because Gonzalez had been a "horrible" witness when he testified in support of the motion to suppress. *Id.* at 104. El-Shabazz indicated that he believed the better strategy at trial was to attempt to draw the validity of the confession into question through the testimony of witnesses other than Gonzalez. *Id.* at 109. El-Shabazz also testified that he informed Gonzalez of his absolute right to testify, and that he made clear to Gonzalez that the final decision regarding whether he should testify belonged to Gonzalez alone. *Id.* at 109.

The PCRA court found the testimony of El-Shabazz more credible than the testimony of Gonzalez. Credibility determinations are the province of the finder of fact, who may believe all, none or some of the evidence. ***Commonwealth v. Tielsch***, 934 A.2d 81, 94 (Pa. Super. 2007). This Court may not weight the evidence or substitute its judgment for that of the fact

- 3 -

J. S45018/08

finder.  **Id.**  Accordingly, we consider the evidence in view of this credibility determination.

El-Shabazz's testimony establishes that he had a reasonable basis for advising Gonzalez not to testify – specifically, his belief that Gonzalez would not make a good witness and that he could instead attack the validity of the confession through other witnesses.  As a result, the PCRA court properly concluded that Gonzalez failed to meet the second prong of the ineffectiveness standard.  *See Taylor*, 933 A.2d at 1041 ("counsel's action or inaction lacked any reasonable basis designed to effectuate Appellant's interest").

Accordingly, the PCRA court acted properly in denying Gonzalez relief and dismissing his PCRA petition.  Thus, we affirm.

Order affirmed.


Judgment Entered.

Prothonotary


Date:_____

- 4 -