IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | : | |
|---|---|---|
| GABRIEL GONZALEZ, | : | CIVIL ACTION |
| | : | (habeas corpus) |
| Petitioner | : | |
| | : | |
| v. | : | NO. 09-2029 |
| | : | |
| RANDALL BRITTON, et al., | : | |
| | : | |
| Respondents | : | |

**AMENDED PETITION FOR WRIT OF HABEAS CORPUS**

LEIGH M. SKIPPER
Chief Federal Defender

ALEXANDER C. BLUMENTHAL
Assistant Federal Defender
Federal Community Defender Office
 for the Eastern District of Pennsylvania
601 Walnut Street, Suite 540W
Philadelphia, PA 19106
215-928-1100

*Counsel for Petitioner,*
*Gabriel Gonzalez*

DATE:     July 25, 2016

## STATEMENT OF THE CASE

1. Mr. Gonzalez was convicted of the February 29, 2000, murder and robbery of Vincent Green, a pizza delivery man. Mr. Gonzalez was originally arrested for an unrelated retail theft and only became a suspect because of an anonymous tip to the police. This anonymous tipster alleged that he was a friend of Mr. Gonzalez and that Mr. Gonzalez had confessed to him that he had murdered a pizza man.

2. Following this anonymous tip, the police then interrogated and obtained a confession from the unsophisticated 19 year old Mr. Gonzalez. From immediately after the interrogation to the present day, Mr. Gonzalez has maintained that the police extracted his confession by choking and beating him. Mr. Gonzalez was convicted based on that coerced confession and the ineffective assistance of his trial counsel. Mr. Gonzalez was sentenced to life imprisonment for his first and only criminal conviction.

3. Mr. Gonzalez hired Tariq El-Shabazz, Esq., to defend him against the murder charge.

### Pretrial Motion to Suppress Statement

4. Prior to trial, Mr. Gonzalez litigated a motion to suppress claiming that the police had coerced his statement and ignored the invocation of his rights to remain silent and to an attorney.

5. Early in the day on March 1, 2000, Mr. Gonzalez was arrested for retail theft. On March 1, 2000, at about 4 p.m., Mr. Gonzalez refused the police request to give a statement about the retail theft. Mr. Gonzalez remained in police custody. Tr. 02/12/2001 at 519-21, 530-31.

6. In the early morning hours of March 2, 2000, Officer Greg Holman received a call from an anonymous man claiming that Mr. Gonzalez had committed a homicide. Tr. 02/12/2001 at 541. Officer Holman instructed the anonymous caller to call Northwest detectives and then notified Detective Edward Davis about the call. *Id*. at 542. About 4 a.m., the anonymous man called back and spoke to Detective Davis. Detective Davis then informed homicide Detective William Gross about this information and sent Mr. Gonzalez to the homicide unit. *Id*. at 540-45.

7. Trial counsel cross-examined the police witnesses on the issue of the timing of Mr. Gonzalez's alleged confession to the anonymous caller. Testimony indicated that the anonymous caller claimed Mr. Gonzalez had confessed to him at 11 o'clock p.m. on March 1 or 12 o'clock a.m. on March 2. *Id*. at 547-48. Accordingly, Mr. Gonzalez was in custody at the time he was supposedly confessing to the anonymous caller.

8. Detectives William Gross and Lawrence McGuffin testified that Mr. Gonzalez arrived at homicide at 4:44 a.m. on March 2. *Id*. at 560. According to the detectives, Mr. Gonzalez immediately gave a warned and voluntary confession. *Id*. at 560-67, 573, 584-85, 597, 602-15.

9. The Commonwealth moved Mr. Gonzalez's statement into evidence. In that alleged statement, Mr. Gonzalez admitted to the instant murder. *Id*. at 629.

10. Mr. Gonzalez's father testified that he visited his son after he was interviewed by the police and saw that his son had new marks around the ears and throat. *Id*. at 635, 646-47.

11. Stephen Serota Esq., an experienced criminal lawyer, testified that he had gone to the police station to represent Mr. Gonzalez. Tr. 02/13/2001 at 652, 655. Mr. Serota spoke to his client immediately after the police finished extracting a statement from Mr. Gonzalez. As

soon as they met, Mr. Gonzalez told Mr. Serota that the police had beaten and choked him until he gave a statement. *Id*. at 662, 666-67, 680-81. Mr. Serota observed:

> a line around [Mr. Gonzalez's] neck, I would guess about 3/8 of an inch in thickness. It was - - I would call that an abrasion. It was very red. It was skin rubbed off, no question about it. It wasn't just a redness of skin. . . . It went from the hairline to the hairline around the neck.

*Id*. at 662-63, 667. Mr. Serota saw that Mr. Gonzalez was distressed and upset. *Id*. at 679.

12. Mr. Gonzalez testified on his own behalf. *Id*. at 686. Mr. Gonzalez explained that, when he was arrested for the retail theft, he told the police that he wanted to remain silent and have the assistance of an attorney. *Id*. at 687. Later, he was taken to homicide and handcuffed to a chair. *Id*. at 688. Detective Gross entered the room and accused him of killing a pizza man. Mr. Gonzalez denied the accusation, invoked his right to remain silent, and requested an attorney. Nevertheless, Detective Gross continued to question Mr. Gonzalez and refused to allow him to speak to an attorney. *Id*. at 688-89. Mr. Gonzalez continued to deny everything and Detective Gross called him a liar. *Id*. at 689. Detective Gross left; Detective McGuffin entered the room and attempted to interrogate him. Mr. Gonzalez again asked to speak to a lawyer and denied that he had done anything. *Id*. at 689-90. Other detectives came in the room and attempted to interrogate Mr. Gonzalez; he continued to deny that he had done anything and to ask for an attorney. *Id*. at 691. Thereafter, Detective Gross came back into the room and said Mr. Gonzalez better start talking. *Id*. at 691-92. When Mr. Gonzalez again denied that he had done anything, Detective Gross repeatedly struck him in the face. *Id*. Detective Gross then began to choke Mr. Gonzalez with both hands. *Id*. at 691-92, 716. Mr. Gonzalez started to cry and told Detective Gross that he would tell him what he wanted to hear. *Id*. at 691-92. Detective Gross called Detective McGuffin into the room, and Mr. Gonzalez gave the statement. *Id*. at 693.

3

13. Mr. Gonzalez explained to the court that the statement was false. *Id.* at 693, 697. Mr. Gonzalez testified that, during the lengthy interrogation, the police did not take him to the bathroom or give him anything to drink. *Id.* at 716. The defense moved into evidence a picture of the defendant with marks on his neck. *Id.* at 730-31, 734.

14. The trial court denied the motion to suppress. *Id.* at 759

**Trial**

15. The day the motion to suppress was denied, a jury was empaneled and trial commenced.

16. The Commonwealth introduced evidence that, at approximately 11:40 p.m. on February 29, 2000, Vincent Green was shot to death. Tr. 02/13/2001 at 791-92. The evidence showed that Mr. Green walked out of the pizza store where he worked as a deliveryman, got in his car, and there was a gunshot from inside the car. Mr. Green then got out of his car, returned to the store, collapsed, and died shortly thereafter. *Id.* at 835-36.

17. The Commonwealth introduced testimony about Mr. Gonzalez's March 1, 2001, arrest for retail theft. Testimony also showed that Mr. Gonzalez was transferred to the homicide unit as the result of an anonymous phone call. Tr. 2/14/2001 at 890-893, 932-33.

18. The centerpiece of the Commonwealth's case and the only direct evidence against Mr. Gonzalez was his confession. There were no eyewitnesses to the shooting and no physical evidence linked Mr. Gonzalez to the crime. Tr. 02/13/2001 at 778, 780, 782. Indeed, substantial evidence contradicted the Commonwealth's theory that Mr. Gonzalez committed the crime. Mr. Green's manager observed the assailant fleeing the scene and described him to the police as a chunky black male. *Id.* at 847. A police officer observed a man he suspected of being the assailant and described him as a dark male. *Id.* at 876. Both of these witnesses testified that the

attacker was wearing a bright colored top. *Id*. at 850-51, 876. In contrast, Mr. Gonzalez is a Hispanic man; his statement asserts that he was wearing dark clothes during the crime, and the police did not recover any bright clothing from Mr. Gonzalez's home. Tr. 02/14/2001 at 1014-15, 1025-26. Moreover, Mr. Green's manager told the police that he did not know the assailant, but he admitted that he knew Mr. Gonzalez. Tr. 02/13/2001 at 845.

19. Defense counsel presented, *inter alia*, Mr. Serota's testimony that he observed marks around Mr. Gonzalez's neck on the date of the interrogation. Tr. 02/15/2001 at 1161-68. In addition, defense counsel presented a photograph of Mr. Gonzalez with a red mark on his neck. Tr. 02/14/2001 at 1064-65; Tr. 02/15/2001 at 1142.

20. Defense counsel did not call Mr. Gonzalez to testify or present any other evidence of what coercive tactics were used or exactly how the police extracted a statement from Mr. Gonzalez. Nor did defense counsel present evidence of Mr. Gonzalez's good character. At closing, the defense could only argue that the jury should draw an inference that there was coercion based on the observations of Mr. Serota and the photograph of Mr. Gonzalez. Tr. 02/20/2001 at 1256-58, 1264-65.

21. The jury found Mr. Gonzalez guilty of, *inter alia*, second degree murder and first degree robbery. Tr. 02/21/2001 at 1390.

22. After the verdict was rendered, the trial court immediately imposed the mandatory life sentence. *Id*. at 1391-92.

**Direct Appeal**

23. Mr. Gonzalez filed a timely notice of appeal. Represented by Mark S. Greenberg, Esq., he claimed that the trial court had erred in not suppressing the confession and trial counsel had rendered ineffective assistance by failing to call character witnesses. Direct Appeal Brief.

On August 7, 2002, the Superior Court denied both claims on the merits and affirmed the conviction. *Commonwealth v. Gonzalez*, 2019 EDA 2001 (Pa. Super. Aug. 7, 2002). On September 6, 2002, Mr. Gonzalez filed a petition for allowance of appeal to the Pennsylvania Supreme Court. On September 3, 2004, the Pennsylvania Supreme Court denied the petition for allowance of appeal. *Commonwealth v. Gonzalez*, 858 A.2d 108 (Pa. Sept. 3, 2004) (table). Mr. Gonzalez did not file a petition for a writ of certiorari to the United States Supreme Court.

### Initial PCRA Proceedings

24. On February 9, 2005, Mr. Gonzalez filed a timely petition for post-conviction relief. In his PCRA petition, Mr. Gonzalez, through counsel Dennis Turner, Esq., asserted one claim: that his trial attorney had interfered with his right to testify in his own defense. *See* Amended PCRA Petition (Oct. 20, 2006). The trial court rejected that claim and the Superior Court affirmed. Trial Court Opinion (Aug. 30, 2007), *Commonwealth v. Gonzalez*, 1586 EDA 2007 (Pa. Super. Aug. 18, 2008). On September 17, 2008, Mr. Gonzalez filed a petition for allowance of appeal to the Pennsylvania Supreme Court. On January 16, 2009, the Pennsylvania Supreme Court denied the petition for allowance of appeal. *Commonwealth v. Gonzalez*, 964 A.2d 1 (Pa. Jan. 16, 2009) (table). Mr. Gonzalez did not file a petition for a writ of certiorari to the United States Supreme Court.

### Federal Habeas

25. Mr. Gonzalez's *pro se* Petition for Writ of Habeas Corpus was docketed on May 11, 2009. (Docket No. 1). In July 2010, this Court granted Mr. Gonzalez's motion to add a new claim and stayed the federal proceedings pending exhaustion of that claim in the state courts. (Docket No. 25). In March 2013, this Court appointed Paul M. George, Esq., to represent Mr. Gonzalez. In October 2013, Mr. Gonzalez, through counsel, filed an amended petition and

memorandum of law. (Docket No. 33). In March 2014, this Court again stayed the instant case pending exhaustion of additional claims raised in the October 2013 filing. (Docket No. 36).

26. During the above-described stays, Mr. Gonzalez, through counsel, litigated additional claims through second and subsequent state PCRA proceedings. However, the Pennsylvania courts rejected those claims as untimely. *See Commonwealth v. Gonzalez*, 826 EDA 2012 (Pa. Super. Dec. 18, 2012); *Commonwealth v. Gonzalez*, 2115 EDA 2014 (Pa. Super. July 7, 2015). This Amended Petition does not raise the claims litigated in those later PCRA petitions.

27. In April 2016, this Court relieved Mr. George and appointed the Federal Community Defender Office to represent Mr. Gonzalez. (Docket No. 51). In April 2016, this Court ordered Mr. Gonzalez to file a comprehensive amended petition by July 25, 2016. (Docket No. 54). This Amended Petition is filed in response to that Order.[1]

## CLAIMS FOR RELIEF

**I. Mr. Gonzalez's Rights Under the 5th, 6th, and 14th Amendments to the United States Constitution Were Violated When the Police Forced him to Give a Statement and the Trial Court Erred in Failing to Suppress that Involuntary and Unwarned Confession.**

28. The police violated Mr. Gonzalez's rights under the 5th, 6th, and 14th Amendments to the United State Constitution. The police failed to properly warn Mr. Gonzalez of his *Miranda* rights, ignored his invocation of those rights, and used unlawful physical and psychological coercion to obtain the confession. Mr. Gonzalez's confession was the key piece of evidence against him and the Commonwealth could not have convicted him without it. The Pennsylvania courts unreasonably rejected this claim.

---

[1] Undersigned counsel is aware of the need to file a hardcopy of this document. The hardcopy will be filed tomorrow, July 26, 2016.

**II.  Trial Counsel was Ineffective for Interfering with Mr. Gonzalez's Right to Testify in his Own Defense and/or Failing to Present Other Available Evidence that Mr. Gonzalez's Statement was Involuntary and Coerced.**

29. Trial counsel deprived Mr. Gonzalez of his 6th Amendment right to the effective assistance of trial counsel by failing to present evidence of Mr. Gonzalez's allegation that the confession was coerced. In order to raise a reasonable doubt as to Mr. Gonzalez's guilt, defense counsel sought to show that the confession was false and involuntary. Defense counsel's strategy was fatally undermined when he ineffectively failed to present evidence as to Mr. Gonzalez's version of events. The Pennsylvania courts unreasonably rejected this claim.

**III.  Trial Counsel was Ineffective for Failing to Investigate, Develop, and Present Character Evidence.**

30. Trial counsel deprived Mr. Gonzalez of his 6th Amendment right to the effective assistance of trial counsel by failing to present evidence of Mr. Gonzalez's good character. At the time of trial, Mr. Gonzalez had a reputation in his community for being peaceful, honest, and law abiding. Multiple witnesses were available to testify to Mr. Gonzalez's good character. Trial counsel unreasonably failed to investigate Mr. Gonzalez's character and call character witnesses. Character evidence was crucial to this case and there is a reasonable probability that testimony about Mr. Gonzalez's good character would have raised a reasonable doubt as to his guilt. The Pennsylvania courts unreasonably rejected this claim.

**IV.  Trial Counsel was Ineffective for Failing to Object to Testimony About the Retail Theft.**

31. Trial Counsel deprived Mr. Gonzalez of his 6th Amendment right to the effective assistance of trial counsel by failing to object to testimony about Mr. Gonzalez's arrest for retail theft. A reasonable attorney would have objected to the improper introduction of evidence that Mr. Gonzalez had committed an unrelated crime and there is a reasonable probability that the

8

result of the trial would have been different if the jury had not heard this irrelevant and prejudicial evidence. The Pennsylvania courts unreasonably rejected this claim.

## EXHAUSTION AND TIMELINESS

32. Claim I was exhausted as Claim A in the direct appeal. Claim I was raised within the time period permitted by the habeas corpus statute as ground one in the May 11, 2009, *pro se* habeas petition.

33. Claim II was exhausted because it is fairly encompassed by the sole claim in the 2006 Amended PCRA petition. Claim II was raised within the time period permitted by the habeas corpus statute because it was fairly encompassed by ground two in the May 11, 2009, *pro se* habeas petition.

34. Claim III was exhausted as Claim D in the direct appeal. Claim III was raised within the time period permitted by the federal habeas corpus statute as ground three in the May 11, 2009, *pro se* habeas petition.

35. Claim IV was exhausted as Claim C in the direct appeal. Claim IV was raised within the time period permitted by the federal habeas corpus statute. This claim is raised in the "Supporting FACTS" section of ground three in the May 11, 2009, *pro se* habeas petition.

36. To the extent this Court finds that these claims have not been properly raised in the state courts, the failure to raise them was due to the ineffective assistance of post-conviction counsel, which establishes cause and prejudice to overcome the procedural default.

## REQUEST FOR RELIEF

For the above reasons as well as those set forth in the *pro se* Petition, Mr. Gonzalez requests that the Court provide the following relief:

9

A) Grant Mr. Gonzalez such discovery as is necessary for full and fair resolution of his claims;

B) Permit Mr. Gonzalez to file a Memorandum of Law in support of his claims;

C) Grant an evidentiary hearing on all claims involving disputed issues of fact; and

D) Vacate Mr. Gonzalez's convictions and sentences.

Respectfully submitted,

LEIGH M. SKIPPER
Chief Federal Defender

*/s Alexander C. Blumenthal/*
Alexander C. Blumenthal
Assistant Federal Defender
Federal Community Defender Office
 for the Eastern District of Pennsylvania
601 Walnut Street, Suite 540W
Philadelphia, PA 19106
215-928-1100

*Counsel for Petitioner,*
*Gabriel Gonzalez*

DATE: July 25, 2016

**CERTIFICATE OF SERVICE**

I, Alexander C. Blumenthal, Assistant Federal Defender, Federal Community Defender Office for the Eastern District of Pennsylvania, hereby certify that I caused a copy of the foregoing to be filed and served electronically through Eastern District Clerk's Office Electronic Case Filing System upon Marilyn F. Murray, Philadelphia District Attorney's Office, Three South Penn Square, Philadelphia, PA 19107.

                                                  */s/  Alexander C. Blumenthal*
                                                  ALEXANDER C. BLUMENTHAL

DATE:       July 25, 2016